[Civil No. 4003. Filed November 14, 1938.]

[84 Pac. (2d) 74.]

ROY MERRILL, as Sheriff of Maricopa County, Arizona, and C. W. PETERSON, GEORGE FRYE and JOHN A. FOOTE, as Members of the Board of Supervisors of Maricopa County, Arizona, Appellants, v. M. T. PHELPS, as Judge of the Superior Court of Maricopa County, Arizona, Appellee.

Mr. John W. Corbin, County Attorney of Maricopa County, and Mr. Lin H. Orme, his Deputy, for Appellants.

Messrs. Baker & Whitney, Mr. Lawrence L. Howe, Mr. Arthur T. LaPrade, Mr. Herman Lewkowitz, Mr. A. S. Gibbons, Mr. Henry Miller, Messrs. Snell, Strouss & Salmon, Messrs. Armstrong, Kramer, Morrison, Roche & Duffy, Mr. James E. Nelson, Messrs. Cunningham & Carson, Mr. Henderson Stockton, Messrs. Clark & Clark, Mr. V. L. Hash, Mr. W. F. Dains, and Mr. David P. Jones and Mr. Harold E. Whitney (of Counsel), for Appellee.

LOCKWOOD, J.—This is an action by M. T. Phelps, as judge of the Superior Court of Maricopa County, hereinafter called plaintiff, against Roy Merrill as sheriff of said county, and C. W. Peterson, George Frye and John A. Foote, as members of the board of supervisors thereof, hereinafter called defendants, seeking a declaratory judgment that plaintiff has a right to have two court bailiffs or attendants upon Division No. 1, of the Superior Court of Maricopa County, therein presided over by plaintiff, with the right to appoint and control them. A judgment was rendered in favor of plaintiff in all respects, and from such judgment defendants have appealed.

There are two questions raised by the appeal, the first being whether or not a declaratory judgment may be rendered in a case of this nature, and the second whether the judgment which was rendered in the lower court is in accordance with the law. The action is based upon sections 4385 to 4390, the material portions, so far as apply to this action, being as follows:

"§ 4385. *Declaratory judgments authorized; form and effect.* Courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed, and the action shall not be open to the objection that a declaratory judgment only is prayed for. The judgment may be either affirmative or negative, and has the force and effect of

a final judgment, subject to appeal as in other actions."

"§ 4386. *Person interested or affected may have declaration.* Any person interested . . . or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder. . . ."

"§ 4387. *Person beneficially interested may have declaration; enumeration not a limitation.* . . .

"The enumeration in this and the preceding sections does not limit or restrict the exercise of the general powers conferred, in any action where declaratory relief is sought, in which a judgment will terminate the controversy or remove an uncertainty."

We think it is clear that the action does lie. The plaintiff claims that he, in his official capacity, has the right to perform certain acts, and that these rights are affected by certain statutes. It also appears from the pleadings that the defendant sheriff claims the same right and that there is a decided controversy and uncertainty as to which official is correct in his contention. We think that a declaratory judgment is the simplest and the best way of determining such right, and that it is fully within the intent and the language of the statute. This being the case, it is necessary for us to ascertain in whom the right to determine the number of bailiffs or court attendants, and to appoint them and control their actions, inheres, the judge of the superior court or the sheriff of the county.

Under the common law of England, the judges did not sit solely in certain particular territorial areas. Their jurisdiction extended to all parts of the country, and they held court part of the time at Westminster, and part of the time in such places as the

business of the nation required. When they exercised the latter function, it was the custom from time immemorial that the sheriff of the county in which the court was to be held, who was the chief administrative officer of that county, met the judge as he entered the county and from that time on furnished him all attendants and other conveniences necessary to carry on the business of the court, obeying its orders in all respects as to what was done. As time went on, however, the office of sheriff, which originally was a very important one in connection with the administration of justice, became more or less of an honorary and ornamental position, and the court gradually took over many of the functions theretofore exercised by the sheriff. Murfree on Sheriffs, sec. 427. The common law of England, so far as applicable to our circumstances and conditions, is the law of Arizona. *Hageman* v. *Vanderdoes*, 15 Ariz. 312, 138 Pac. 1053, L. R. A. 1915A 491, Ann. Cas. 1915D 1197; *Masury & Son* v. *Bisbee Lumber Co.*, 49 Ariz. 443, 68 Pac. (2d) 679; sec. 3043, Rev. Code 1928. The power exercised by the sheriff under the common law still pertains to our sheriff, except in so far as it has been modified by constitutional and statutory provisions. We turn then to these last-named sources to see whether anything therein throws a light upon the present situation. Article 12, section 4, of the Constitution, which refers to counties and county officers, reads as follows:

"The duties, powers, and qualifications of such officers shall be as prescribed by law. . . ."

Since the sheriff is a county officer, the legislature, under this section, obviously has the power to fix his duties and powers, except in so far as it may be limited by other portions of the Constitution. Section 837, Revised Code 1928, sets forth the duties of the sheriff as follows:

"*Duties of sheriff.* The sheriff shall: . . . 2. attend all courts, except justice and police courts, at their sessions held within his county, and obey their lawful orders and directions; . . . "

Section 3693, Rev. Code 1928, is in the following language:

"*Place of holding court; provision therefor.* The sessions of the superior court shall be held at the county seat; if a room for holding the court be not provided by the county, together with attendants, fuel, lights, and supplies, suitable and sufficient for the transaction of business, the court may direct the sheriff to provide the same and the expenses thereof shall be a county charge."

These provisions have appeared in our statutes since early territorial days, and were carried forward, after the adoption of the Constitution in 1912, in almost identical language. It will be seen therefrom that it is the duty of the sheriff to attend upon the court and obey all of its lawful orders. This, of course, may be done either by the sheriff in person or by his lawfully authorized deputies. In other words, he is the executive arm of the court, acting under its orders in all respects, but his election, or the selection of his deputies, is not within the jurisdiction of the court. That is governed by other provisions of the law. Article 12, sec. 3, Const. of Arizona; secs. 59, 824 and 827, Rev. Code 1928. So far, therefore, as a court attendant is required, it would seem plain that either the sheriff or his legally appointed deputies must act, and that the judge of the superior court, while he may direct what they should do, has no authority to interfere in the choice of the deputies.

But, it is urged, there are many duties performed by bailiffs, or court attendants, for which the services of a peace officer are not necessarily required. Plaintiff

enumerates the duties of court attendants in his complaint as follows:

"(a) To direct the jurors to their places in the jury box while impanelling the jury;

"(b) To maintain order and decorum in the court room at all times during the sessions of the court;

"(c) To prevent the effacing and destruction of the furniture and fixtures in the court room;

"(d) To see that such court room is properly lighted, ventilated and heated;

"(e) To take charge of the jury when under the rule and after the case has been finally submitted, and to see that no one communicates with the jury during its deliberations;

"(f) To wait upon the judge while upon the bench and to convey to the judge and to lawyers such law books as they may request;

"(g) To keep the corridors clear when the court room is crowded and to keep order therein;

"(h) To call witnesses into the court room and answer telephone calls at all times;

"(i) To call attorneys and others whose attendance upon the court are required; and

"(j) To do numerous other duties not hereinabove specifically mentioned and set out."

It is plain that many, if not most, of these services can be performed by any reasonably intelligent individual, and that they involved to a great extent the duties ordinarily performed by ushers, janitors and pages, rather than peace officers authorized to maintain order and make arrests. But it by no means follows that because these duties are not such as can be performed only by peace officers, such officers may not be required to perform them. That these services are reasonably necessary for the proper functioning of a court of record is obvious, and if so, it is the duty of the sheriff, or his deputies, to perform them when ordered by the court. Sec. 837, *supra*. The legislature has realized this, for it has provided by section 3693, Revised Code 1928, that it is the duty

of the county in which the court is held to make provision for the various things necessary to enable court to be held properly, including a room, fuel, lights, supplies and attendants, and which shall be "suitable and sufficient for the transaction of business," and if these are not provided, the court may direct the sheriff to provide the same, and the expense thereof shall be a county charge.

Taking all of these statutes into consideration, and giving them their reasonable and logical construction, we think that thereunder it is the duty of the sheriff to provide such attendants for the court, either in person or by deputy, as are necessary to carry out the court's orders, and that it is the primary duty of the board of supervisors to provide all other things named in sec. 3693, *supra,* the sheriff having the right to provide these additional things only when the supervisors fail, and when he is directed to do so. Nowhere in the statutes is there any intimation that a judge of the superior court, primarily and of his own initiative, has the duty or the authority to provide any of the things mentioned in section 3693, *supra,* as necessary for transacting the business of the court. The statute, however, does very definitely state that these things must be "suitable and sufficient for the transaction of business." Who, then, is to determine whether what is provided complies with this requirement? We think it is plain that the only person who can properly determine this is the judge who presides over the court. He, and he alone, knows what is reasonably suitable and sufficient to properly carry out the work of the court, and the legislature has very wisely left it to his discretion as to whether the supervisors and the sheriff have made the proper provisions, and if they have not, he is specifically authorized to direct that they be made, which necessarily and incidentally includes determining what is required, and if

is the mandatory duty of the sheriff to provide them, to the reasonable satisfaction of the judge. Further than that, we think it follows impliedly from the statute that the judge, when the attendants are provided, has the sole and exclusive jurisdiction of determining how many these attendants shall be, and they must act in accordance with his direction while in attendance upon the court, regardless of the instructions of any other person whatever, and if they do not so act, to the satisfaction of the judge, they are not "suitable and sufficient for the transaction of business" of the court, and he may require that other attendants be provided satisfactory to him.

If the statutes which we have cited are constitutional, we think there can be no question that this settles the matter in controversy. But, it is urged, these statutes, if they be construed as necessarily they must be, violate the Constitution in that they take away from the court certain inherent powers which belong to it.

We have had the question of the inherent powers of the courts under consideration to some extent in the case of *De Camp* v. *Central Arizona Light & Power Co.*, 47 Ariz. 517, 57 Pac. (2d) 311. In discussing the rule-making power, we said (p. 521):

" . . . The legislature, in this field as well as in all other legislative matters, has the supreme authority, except in so far as any rules made by it may unreasonably limit or hamper the courts in the performance of the duties imposed upon them by the Constitution, or violate the provisions of article 3 of our Constitution, which reads as follows:

"'The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.'"

And we think that this same principle is applicable to questions such as that which we are now considering. If the method of procedure laid down by the legislature for the handling of the business of the court, including therein the providing of attendants, is not such as to unreasonably limit or hamper the court in the performance of its duties, such legislation is valid. It is only when we can say that it is so unreasonable that it prevents or hampers the performance of the constitutional duties imposed on the court, that the statute is not constitutional.

But it may be said that to permit one public officer to appoint a deputy, who is nevertheless by law subject to the exclusive control of another officer, in so far as certain of his duties are concerned, is bound to give rise to such a conflict in authority and so much friction and bad feeling, that it will hamper the court in the performance of its duty. We think this is a *non sequitur*. Public officers are all presumed to be servants of the public, working harmoniously together in the interest of their employer, and willing to lay aside their own personal feelings in the interest of the better transaction of public business. We cannot presume that a sheriff would be unmindful of the necessity of selecting assistants who were not only physically and intellectually qualified to carry out the orders of the court, but were also of such character as to work in perfect harmony with the presiding judge. Nor can we presume that a judge would refuse to accept an attendant otherwise suitable in all respects, merely because of personal pique, captious criticism, or an insistence on his individual authority. On the contrary, we must assume that a sheriff will at all times consult the judge in regard to the choice of the personnel who are to be attendants upon the court, and that the judge will not unreasonably reject any attendant selected by the sheriff. We think that so long as

the judge has the final decision as to whether the attendants chosen by the sheriff are sufficient in number and of such a character so that the things which the court thinks are necessary for these attendants to do are done, the essential dignity of the court is protected and an orderly and proper transaction of business is assured. And this qualification of the power of the sheriff is recognized by the statute itself when it says that the attendants must be "suitable and sufficient for the transaction of business."

A question almost identical with that involved in the case at bar, under statutes and constitutional provisions much similar to ours, was presented in the case of *State ex rel. Hillis* v. *Sullivan,* 48 Mont. 320, 137 Pac. 392. The court, after discussing both the statutes and the inherent power of courts, held that it was primarily the duty and the right of the sheriff to select attendants for the court, and that this was the normal and orderly method which was to be observed so long as it was adequate in results. It continued, however (p. 395):

". . . When, however, these methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency arises which the established methods cannot or do not instantly meet, then and not until then does occasion arise for the exercise of the inherent power. [Citing cases.]

"Neither, in our opinion, is it necessary for the preservation of judicial independence that the district court should have the power to appoint its own attendants, fix their compensation, and compel payment out of the public funds, without recourse to the sheriff, who is paid for that service, or to the county commissioners, who are charged with the supervision of county expenditures. The court is entitled to trustworthy and competent attendants as needed; it is not obliged to accept any other; it may procure such ser-

vice if the sheriff does not, or the board will not, supply it. How, then, can its independence be endangered when the remedy is in its own hands? . . . ''

And this case was reviewed and quoted approvingly in *State* v. *Leavitt,* 44 Idaho 739, 260 Pac. 164.

We hold, therefore, that the primary power of providing suitable attendants for the superior court of Arizona rests in the sheriff, as stated herein, but that if the court is of the reasonable opinion that the attendants so provided are not sufficient in number or suitable in character, it can demand that sufficient and suitable attendants be provided, and refuse to accept any that, in its opinion, do not satisfy these requirements.

The declaratory judgment heretofore rendered is reversed, and the case remanded with instructions to enter judgment in accordance with the rules expressed herein.

McALISTER, C. J., and ROSS, J., concur.