193 P.3d 320

Constable Annette CLARK, Constable of Arcadia Biltmore (f/k/a East Phoenix Two) Justice Precinct, Plaintiff/Appellant,

v.

Honorable Colin CAMPBELL, Maricopa County Superior Court Judge; Honorable Barbara Rodriguez Mundell, Maricopa County Superior Court Judge; Honorable Michael Orcutt, Arcadia Biltmore (f/k/a East Phoenix Two) Justice Court; David R. Smith, County Administrative Officer; Joseph Arredondo, Constable; Don Calendar, Constable; Doug Middleton, Constable; Phil Hazlett, Constable; Murel Stephens, Constable; Gary Wilson, Deputy Constable; Robert White, Deputy Constable; John Powers, Constable; Gilbert Trejo, Deputy Constable, Defendants/Appellees.

No. 1 CA–CV 07–0529.

Court of Appeals of Arizona, Division 1, Department E.

July 10, 2008.

Jones Skelton & Hochuli, PLC By Georgia A. Staton and Taylor C. Young, Phoenix, Attorneys for Plaintiff/Appellant.

Terry Goddard, Attorney General, Phoenix, By Bryan E. Schmid, Assistant Attorney General, Tucson, Attorneys for Defendants/Appellees Colin Campbell and Barbara Rodriguez Mundell.

Law Office of Dean Wolcott By Dean M. Wolcott, Phoenix, Attorneys for Defendants/Appellees Michael Orcutt, David R. Smith, Joseph Arredondo, Don Calendar, Doug Middleton, Phil Hazlett, Murel Stephens, Gary Wilson, Robert White, John Powers, and Gilbert Trejo.

## OPINION

NORRIS, Judge.

¶ 1 In this appeal, we examine the supervisory authority a superior court presiding

judge has over justice court constables, whether that authority allows the presiding judge to impose disciplinary sanctions against a constable and, if so, what procedures a presiding judge must follow in taking such action. For the following reasons, we hold a presiding judge has supervisory authority to impose disciplinary sanctions against a constable but, in exercising that authority, the presiding judge must give the constable notice, an opportunity to be heard, and an explanation of why such discipline is necessary.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In November 2000, Annette Clark was elected to a four year term as Constable for Maricopa County's East Phoenix # 2 Justice Precinct ("Precinct").[1] On May 16, 2002, the Maricopa County Justice System Coordinator wrote to the Constable Ethics Committee[2] and informed it that, after Clark took office on January 1, 2001, "[c]itizens, litigants and public employees" had made regular formal and informal complaints to Maricopa County about Clark's "lack of professionalism, rudeness toward county and court staff as well as citizens, and a lack of diligence in performing her duties."

¶ 3 On July 23, 2002, the Constable Ethics Committee announced it had reprimanded Clark "for misconduct in office and other violations of the Code of Conduct for Constables" and "voted to urge Ms. Clark to retire

from office" (the "Reprimand"). *See* A.R.S. § 22–136(D).

¶ 4 On August 2, 2002, Maricopa County Superior Court Judge Cathy M. Holt issued an Injunction Against Workplace Harassment ("Injunction") against Clark. The Injunction prohibited Clark from entering the East Phoenix # 2 Justice Court ("Justice Court") building except "to retrieve or pick up documents for service or to return documents that have been served or to ask questions re: same of Judge Michael Orcutt." It also prevented her from communicating with certain Justice Court staff members. As a result, Clark's office was relocated to another justice court building. In January 2003, the superior court amended the Injunction to prevent Clark from entering the Justice Court building and ordered Maricopa County to transport all legal process for service, returned process, and any other documents between Clark's new office and the Justice Court building.

¶ 5 Several months later, relying on A.R.S. § 22–131(A) (Supp.2007),[3] the Honorable Colin Campbell, as the Presiding Judge of the Maricopa County Superior Court ("Presiding Judge"), advised Clark her services in attending the Justice Court would not be needed and the Justice Court would no longer be directing any process to her for service. His letter, dated October 14, 2003, stated in full:

> Pursuant to A.R.S. § 22–131(A), you are hereby noticed that for the duration of your term as Constable, your services in attending the East Phoenix Two Justice

---

1. The precinct is now known as the Arcadia Biltmore Justice Precinct.

2. The Constable Ethics Committee, established by the Legislature in 2001, investigates complaints involving a constable's ethical or personal behavior. Under Arizona Revised Statutes ("A.R.S.") section 22–136(D) (2002), the Committee was authorized to "attempt" to remedy a constable's inappropriate behavior by, *inter alia,* "[i]ssuing warnings, reprimands or admonishments" and "[u]rging a constable to retire from office."
A.R.S. § 22–136 was amended in 2006 and 2007. 2007 Ariz. Sess. Laws, ch. 143, §§ 4–5 (1st Reg.Sess.); 2006 Ariz. Sess. Laws, ch. 208, § 2 (2d Reg.Sess.). The 2007 amendment renamed the Constable Ethics Committee and recodified subsection D, incorporating it in subsection A of the newly added A.R.S. § 22–137

(Supp.2007). 2007 Ariz. Sess. Laws, ch. 143, §§ 4–5.

3. With the exception of our citation to A.R.S. § 22–136, see *supra* note 2, we cite to the current version of all statutes cited herein because no modifications material to our decision have been made.
> A.R.S. § 22–131(A) states in full:
> Constables shall attend the courts of justices of the peace within their precincts when required, and within their counties execute, serve and return all processes and notices directed or delivered to them by a justice of the peace of the county or by competent authority. In addition to any other provision of law these duties may be enforced by the presiding judge of the superior court in the county, including the use of the power of contempt.

Court are no longer required. The Court will no longer be directing to you any process or notice for service or return.

The next day, Maricopa County's Administrative Officer wrote to Clark:

> We have been advised by the Maricopa County Superior Court that effective this date your services are no longer required by them in serving court documents in Maricopa County.
>
> You are being personally served the Maricopa County Superior Court directive and this letter by the Maricopa County Sheriff's Office. As a result of the Court's action, you are hereby ordered to surrender all items of County property including but not limited to:
>
> · 2 metal Constable badges,
>
> · Any and all County issued identification cards,
>
> · Pagers, and
>
> · Any documents and court papers previously issued to you by the Maricopa County courts, including those documents previously served and those pending service.
>
> Effective today, your access to County facilities will be limited to that of the general public.

¶ 6 Consistent with these letters, on October 17, 2003, the Presiding Judge issued Administrative Order No. 2003–102:

> The Court having determined that process for East Phoenix Justice Court Number Two need not be served by Constable Annette Clark, her services not being required,
>
> IT IS ORDERED:
>
> Constable Clark shall return all process, court logs required to· be kept pursuant to statute and paperwork on court matters to Betty Adams, the Constable Administrator, immediately, but no later than noon on Tuesday, October 21, 2003.

¶ 7 Clark continued to receive her salary while interim constables performed her duties. On November 2, 2004, Clark was re-elected for another four year term as Consta-

ble. On November 30, 2004, the Presiding Judge again wrote to Clark:

> Pursuant to A.R.S. § 22–131(A), you are hereby notified that your services in attending the East Phoenix Two Justice Court are not required during your next term of office commencing January 1, 2005. The Court will not direct to you any process or notice for service or return. Should the situation change, we will notify you.

¶ 8 After the Maricopa County Attorney's Office denied Clark's request to bring a quo warranto action on her behalf, Clark filed a complaint in quo warranto in her own name. *See* A.R.S. §§ 12–2042, –2043 (2003) (if county attorney refuses to bring action in quo warranto, party may petition the court to accept action brought in own name). Clark named the Presiding Judge as a defendant. Additionally, she named as defendants the Presiding Justice of the Peace for the Precinct, the Maricopa County Administrative Officer, and seven constables and deputy constables who were performing her duties (collectively, "County Defendants"). She alleged the Presiding Judge and certain of the County Defendants had "deprived [her] from her duly elected position as Constable ... without legal cause or due process."

¶ 9 The Presiding Judge moved to dismiss Clark's complaint asserting Clark was not entitled to bring a quo warranto action. The County Defendants joined the Presiding Judge's motion and also asserted Clark had failed to state a claim because she still held the office of constable. Before the court could rule on the pending motions, Clark moved for summary judgment and essentially asserted the Presiding Judge and the County Defendants had constructively removed her from office without authority to do so and in violation of her right to due process. After the parties filed additional motions and memoranda addressing these and related issues, the superior court [4] dismissed the complaint, reasoning it did not have jurisdiction because Clark's complaint was in essence a lateral appeal from the superior court's Injunction and the Presiding

---

4. Although this action remained in the Superior Court of Maricopa County, that court transferred the case for reassignment to judges from Pinal County.

Judge's Administrative Order. Clark appealed.

¶ 10 In a memorandum decision, we concluded the superior court had jurisdiction over Clark's action because she was "challeng[ing] the propriety of the presiding judge's directives regarding the East Phoenix No. 2 constable position." *Clark v. Campbell*, 1 CA–CV 05–0301, at 14, ¶ 29 (Ariz.App. June 29, 2006) (mem.decision) *("Clark I")*. We also expressed general agreement with the Presiding Judge's argument that "if [the presiding judge] determines that a court official, including an elected official, is not doing the job adequately, his administrative duties require him to take corrective action." *Id.* at 12, ¶ 28 (internal quotation marks omitted). We did not decide whether the actions taken by the Presiding Judge regarding Clark ("the supervisory actions") exceeded the scope of his supervisory authority. We remanded for further proceedings.

¶ 11 On remand, Clark amended her complaint to request special action and declaratory relief alleging the Presiding Judge had acted arbitrarily, capriciously, and outside his legal authority in taking the supervisory actions.[5] In addition, she asked the court to enjoin the Presiding Judge and the County Defendants "from interfering with the performance of [her] duties" as constable.

¶ 12 Clark eventually moved for summary judgment and argued the Presiding Judge had no authority to take the supervisory actions against her and had done so in violation of her due process rights to notice and an opportunity to be heard.

¶ 13 In response, the Presiding Judge argued he had been granted administrative supervision over the justice of the peace courts within Maricopa County and, pursuant to that authority, was authorized to supervise both the operations of the justice courts and their personnel, including Clark. Although the Presiding Judge did not provide the court with any evidence he had implemented the supervisory actions because of any com-

plaints about or problems with Clark, he nevertheless argued the supervisory actions were appropriate, relying on the Injunction, complaints received by Maricopa County about Clark, and the Reprimand. He also asserted Clark was not entitled to any due process protections because she did not have a property right to her office. The County Defendants also opposed Clark's summary judgment motion and asserted they had no legal or administrative authority to direct or permit Clark to return to her duties as constable.

¶ 14 Treating the separate responses filed by the Presiding Judge and the County Defendants as cross-motions for summary judgment, the superior court denied Clark's motion and granted the Presiding Judge and County Defendants summary judgment. In so doing, it held, inherent in his administrative supervision of the justice courts, the Presiding Judge had been authorized "to direct whether Constable Clark would attend the [East Phoenix # 2] Justice Court and whether any notices and processes would be directed or delivered to her." Although noting the Presiding Judge had not stated any reasons for taking the supervisory actions, the court found "the only reasonable inference [wa]s that" the Injunction and Reprimand had "contribute[d] heavily to Judge Campbell's decision to take the action at issue" and that his actions were not "arbitrary, capricious, or an abuse of discretion." Finally, the court rejected Clark's due process argument finding she did not have a property right in her elected position or in performing the duties she had been elected to perform and she had not been removed from office because she had continued to hold her title and collect her salary.

¶ 15 Clark appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12–120.21 and –2101 (2003).

## DISCUSSION

■ ¶ 16 On appeal, Clark argues the superior court should not have granted sum-

---

5. Judge Barbara Rodriguez Mundell replaced Judge Colin Campbell as Presiding Judge of Maricopa County in July 2005. Clark's amended complaint added Judge Mundell as a necessary party to the litigation. Because the supervisory actions were taken by Judge Campbell, we use the male pronoun in this opinion.

mary judgment against her because the Presiding Judge exceeded his authority in taking the supervisory actions. She also argues, even if the Presiding Judge had the authority to take the supervisory actions, he violated her procedural due process rights because he failed to give her notice, an opportunity to be heard, and acted "for no stated reason." Finally, she contends the court should not have granted the County Defendants summary judgment because they were necessary parties for her quo warranto and special action claims. The arguments Clark raises in this appeal are questions of law, and so our review is de novo. *Midland Risk Mgmt. Co. v. Watford,* 179 Ariz. 168, 170, 876 P.2d 1203, 1205 (App.1994).

## I. Authority of the Presiding Judge

¶ 17 In *Clark I,* we recognized that generally a presiding judge is empowered to take "corrective action" when he or she determines that a court official, including an elected official, is not adequately doing his or her job. See *supra* ¶ 10. The question now before us is whether this power includes the supervisory actions taken by the Presiding Judge when, as the elected constable for the Justice Court, Clark was statutorily entitled to attend the Justice Court and serve its process. We hold the Presiding Judge was empowered to take the supervisory actions pursuant to statutory and constitutional authorities.

¶ 18 In Arizona, the office of constable is a legislative creation. A.R.S. § 22–102 (2002); *Barrows v. Garvey,* 67 Ariz. 202, 204, 193 P.2d 913, 914 (1948). Although the Arizona Constitution requires a constable's salary to be fixed and definite, Ariz. Const. art. 22, § 17, it is the Legislature that has established the qualifications for holding the office, A.R.S. § 11–402 (2001), *construed in Nicol v. Superior Court,* 106 Ariz. 208, 209, 473 P.2d 455, 456 (1970), its term, A.R.S. § 22–102, and its duties, A.R.S. § 22–131(A). These duties require constables to attend the justice courts and to serve process directed or delivered to them by the justices of the peace. A.R.S. § 22–131(A). Historically, the

office of constable has been linked with the office of sheriff. Op. Ariz. Att'y Gen. I84–167, at n. 3; 80 C.J.S. Sheriffs & Constables § 20 (2000). The Legislature has recognized the connection between these offices as it has directed "[t]he provisions of law relating to sheriffs, as far as applicable, shall govern the powers, duties and liabilities of constables." A.R.S. § 22–131(D).

¶ 19 The Legislature did not leave the duties of a constable unsupervised. The Legislature provided, in the last sentence of A.R.S. § 22–131(A), that "[i]n addition to any other provision of law these duties may be enforced by the presiding judge of the superior court in the county, including the use of the power of contempt." This enforcement authority does not mean, as Clark argues, that a presiding judge may only take steps that will compel a constable to attend a justice court or serve its process. The power to enforce a constable's performance of his or her duties necessarily includes the power to ensure that the constable is properly performing these duties and, when he or she is not, to take corrective action.

¶ 20 A presiding judge also has supervisory authority over constables pursuant to the Arizona Constitution. The state constitution grants the supreme court "administrative supervision over all the courts of the State." Ariz. Const. art. 6, § 3. The supreme court has authorized each county's presiding judge to "exercise administrative supervision over the justice of the peace courts in their counties." Ariz. Sup.Ct. Admin. Order No. 96–32. Administrative "[c]onnotes of or pertains to administration, especially management, as by *managing or conducting, directing, or superintending, the execution, application or conduct of persons* or things. Particularly, having the character of executive or ministerial action. In this sense, administrative functions or acts are distinguished from such as are judicial." *In re Shannon,* 179 Ariz. 52, 76, 876 P.2d 548, 572 (1994) (quoting *Black's Law Dictionary* 42 (5th ed.1979)) (emphasis in original). This administrative supervision includes the power to "manag[e] the conduct of court personnel." *Id.*[6]

**6.** In 2002, the supreme court issued Administrative Order No. 2002–67 to increase the uniformity and effectiveness of case and financial management in the limited jurisdiction courts

¶ 21 The duties of a constable, while more limited, closely resemble and, as discussed above, are historically linked to another county officer, the sheriff. Both the Arizona Supreme Court and this court have recognized that a sheriff, when carrying out certain of the statutory duties of the office, is acting as an officer of the court. *State ex rel. Andrews v. Superior Court*, 39 Ariz. 242, 248–49, 5 P.2d 192, 195 (1931); *Arpaio v. Baca*, 217 Ariz. 570, 579, ¶ 27, 177 P.3d 312, 321 (App.2008); *see also* A.R.S. § 11–441(A)(4), (7) (Supp.2007) (sheriff is required to "[a]ttend all courts ... [as] requested by the presiding judge" and to "[s]erve process and notices in the manner prescribed by law"). When a constable attends a court and serves process as directed by a court, the constable, like a sheriff, is acting as an officer of the court. Therefore, the court "has jurisdiction either to exercise control over the act or to discipline the officer for doing or not doing it." *Andrews*, 39 Ariz. at 248–49, 5 P.2d at 195. Such control and discipline extends to directing when a constable is to attend a justice court and whether a constable is to serve process on behalf of the court.

¶ 22 The scope of the court's power over its own officers was addressed by the supreme court in *Merrill v. Phelps*, 52 Ariz. 526, 84 P.2d 74 (1938). Although in *Merrill* the supreme court examined the interplay between the authority of a superior court judge and a county sheriff, given that a sheriff and a constable both act as officers of the court in carrying out certain duties, *Merrill* is instructive.

¶ 23 In *Merrill*, the court was confronted with one statute requiring a sheriff to "attend" certain courts within the county and obey their "lawful" orders and directions and another statute which allowed the court to

direct the sheriff to provide "suitable and sufficient" attendants if not otherwise provided by the county. *Id.* at 530–31, 84 P.2d at 76–77. Describing the sheriff as the "executive arm of the court," the court held the sheriff's selection of his deputies was not within the jurisdiction of the court. *Id.* at 531, 84 P.2d at 77. Although the sheriff was, thus, entitled to select the deputies to attend the court, the supreme court nevertheless held the court, not the sheriff, had the right to determine if the attendants selected by the sheriff were "suitable and sufficient." *Id.* at 533, 84 P.2d at 78. The court went on to state:

we think it follows impliedly from the statute that the judge, when the attendants are provided, has the sole and exclusive jurisdiction of determining how many these attendants shall be, and they must act in accordance with his direction while in attendance upon the court, regardless of the instructions of any other person whatever, and if they do not so act, to the satisfaction of the judge, they are not "suitable and sufficient for the transaction of business" of the court, and he may require that other attendants be provided satisfactory to him.

*Id.* at 534, 84 P.2d at 78.

¶ 24 In so holding, the court rejected the argument that to permit one public officer, the sheriff, to appoint court attendants who would then be subject to the exclusive control of another officer, the judge, would "give rise to such a conflict in authority" as to "hamper the court in the performance of its duty." *Id.* at 535, 84 P.2d at 78. The court explained it "must assume that a sheriff will at all times consult the judge in regard to the choice of the personnel who are to be attendants upon the court, and that the judge will

---

of Maricopa County. The supreme court suspended the administrative duties of the county's Presiding Justice of the Peace and specifically authorized Presiding Judge Colin Campbell "to enter orders to make personnel, management or organizational changes to Justice Court Administration as he deems necessary to accomplish the directives and goals of [the] administrative order." Ariz. Sup.Ct. Admin. Order No. 2002–67, at 2. In 2006, the supreme court revested certain general administrative duties in the Presiding Justice of the Peace of Maricopa County

and reaffirmed the Presiding Judge's general administrative supervision over the justice courts. Ariz. Sup.Ct. Admin. Order No. 2006–56. On July 1, 2008, the supreme court "expand[ed]" the day-to-day authority and responsibilities exercised by Justices of the Peace" in Maricopa County and again reaffirmed the Presiding Judge's "administrative supervision over all courts in the County," including the justice courts. Ariz. Sup.Ct. Admin. Order No. 2008–59, at 1, 2.

not unreasonably reject any attendant selected by the sheriff." *Id.* Thus, the ultimate responsibility for determining whether a court officer was suitable rested with the court, even though the court officer had been selected by an officer in another branch of government.

¶ 25 In *Mann v. Maricopa County*, 104 Ariz. 561, 563, 456 P.2d 931, 933 (1969), our supreme court reaffirmed its conclusion that the judiciary "has the power of control of personnel . . . working directly in connection with the administration of justice." There, a county board of supervisors rejected a request by the court to allow a bailiff and a probation officer to continue working past the statutory retirement age applicable to county employees. *Id.* at 562–63, 456 P.2d at 932–33. The supreme court concluded that because the judiciary had the inherent power to control the "personnel directly connected with the operation of the Courts," the board of supervisors had a duty to approve the court's request absent a showing the request had been made unreasonably, arbitrarily, and capriciously. *Id.* at 566, 456 P.2d at 936. This inherent power, the court explained, was grounded on our tripartite system of government:

> It is an ingrained principle in our government that the three departments of government are coordinate and shall cooperate with and complement, and at the same time act as checks and balances against one another but shall not interfere with or encroach on the authority or within the province of the other. The legislative and executive departments have their functions and their exclusive powers, including the "purse" and the "sword." The judiciary has its exclusive powers and functions, to wit: it has judgment and the power to enforce its judgments and orders . . . . it is the genius of our government that the courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source. It is abhorrent to the principles of our legal system and to our form of government that courts, being a coordinate department of government, should be compelled to depend upon the vagaries of an extrinsic will. Such would interfere with the operation of

the courts, impinge upon their power and thwart the effective administration of justice.

*Id.* at 564–65, 456 P.2d at 934–35 (quoting *Smith v. Miller*, 153 Colo. 35, 384 P.2d 738, 741 (1963)).

¶ 26 Although the voters selected Clark, based on authority granted by the Legislature and the supreme court as allowed by the Arizona Constitution, the Presiding Judge had both the right and the responsibility to exercise supervisory authority over Clark and was empowered to determine whether she was properly performing the statutory duties required of her in her capacity as an officer of the court. By the same authority, the Presiding Judge had the power to take appropriate and reasonable disciplinary action if she was not. Such action could properly include the supervisory actions at issue here.

## II. Notice, an Opportunity to be Heard, and an Explanation

¶ 27 Clark next argues that even if the Presiding Judge was empowered to take the supervisory actions, he should not have done so without giving her basic due process protections: notice and an opportunity to be heard. She also argues that because the Presiding Judge failed to explain why he had decided to take the supervisory actions, the superior court was in no position to find, as it did, that the Injunction and Reprimand "contribute[d] heavily" to the Presiding Judge's decision to act. Accordingly, Clark asserts the Presiding Judge's decision to implement the supervisory actions must be considered arbitrary and capricious, in violation of her due process rights.

¶ 28 To sustain her due process claim Clark must establish she was deprived of a property interest protected by state law. *Baker v. Ariz. Dep't of Revenue*, 209 Ariz. 561, 567, ¶ 25, 105 P.3d 1180, 1186 (App. 2005). Our supreme court has recognized that an elected official "has no vested right in the office which he holds." *Ahearn v. Bailey*, 104 Ariz. 250, 254, 451 P.2d 30, 34 (1969) (quoting *State ex rel. Bonner v. District Court*, 122 Mont. 464, 206 P.2d 166, 169

(1949)) (internal quotation marks omitted).[7] Thus, the "concept [of due process] does not protect the right to hold [elected] office." *Mecham v. Gordon,* 156 Ariz. 297, 302, 751 P.2d 957, 962 (1988).[8] Although we agree Clark did not "own" her office but held it "in the interest and for the benefit of the people," *Ahearn,* 104 Ariz. at 254, 451 P.2d at 34 (quoting *Bonner,* 206 P.2d at 169), the Presiding Judge should have given Clark notice and an opportunity to be heard before taking the supervisory actions and, then, an explanation of the reasons for his actions. When a court exercises administrative supervision over officers of the court and court operations, it must act reasonably, with due regard for the authority and duties of these officers. *Merrill* recognized this precise point.

■ ¶ 29 When examining the relationship between the sheriff and the court, the *Merrill* court repeatedly emphasized the obligation of the court to act reasonably when reviewing the suitability of the deputies selected by the sheriff. The sheriff must provide deputies "to the reasonable satisfaction of the judge," *Merrill,* 52 Ariz. at 534, 84 P.2d at 78, and only if "the court is of the reasonable opinion that the attendants so provided are not sufficient in number or suitable in character [can it] demand that sufficient and suitable attendants be provided." *Id.* at 537, 8 P.2d at 79. This reasonableness requirement extends to the relationship between the presiding judge and a constable and requires the presiding judge to act reasonably when reviewing a constable's per-

formance of his or her duties as an officer of the court.

¶ 30 *Merrill* does not stand alone. In a series of cases involving controversies and conflicts between courts and counties regarding the selection of or funding for court personnel, our supreme court and this court have made it abundantly clear that courts must act reasonably, must follow reasonable county procedures for filling vacancies and in making funding requests, and must pursue "reasonable avenues of cooperation and compromise." *Maricopa County v. Tinney,* 183 Ariz. 412, 414, 904 P.2d 1236, 1238 (1995); *see also Maricopa County v. Dann,* 157 Ariz. 396, 758 P.2d 1298 (1988); *Deddens v. Cochise County,* 113 Ariz. 75, 546 P.2d 811 (1976); *Broomfield v. Maricopa County,* 112 Ariz. 565, 544 P.2d 1080 (1975); *Birdsall v. Pima County,* 106 Ariz. 266, 475 P.2d 250 (1970); *Roylston v. Pima County,* 106 Ariz. 249, 475 P.2d 233 (1970); *Mann v. County of Maricopa,* 104 Ariz. 561, 456 P.2d 931 (1969); *Lockwood v. Bd. of Supervisors of Maricopa County,* 80 Ariz. 311, 297 P.2d 356 (1956); *Powers v. Isley,* 66 Ariz. 94, 183 P.2d 880 (1947); *Reinhold v. Bd. of Supervisors of Navajo County,* 139 Ariz. 227, 677 P.2d 1335 (App.1984). In all respects, the touchstone is reasonableness.

■ ¶ 31 Although these cases focused on the relationship between separate, albeit interconnected, branches of government, their larger message is the same as in *Merrill* and is appropriate here: in exercising administrative supervision over a constable, a presiding judge must act reasonably, with

7. In support of her claim that elected officials are entitled to due process in disciplinary proceedings, Clark relies on *In re Ackel,* 155 Ariz. 34, 745 P.2d 92 (1987), *overruled in part by In re Jett,* 180 Ariz. 103, 882 P.2d 414 (1994). In *Ackel,* the Commission on Judicial Qualifications recommended permanent removal of an elected Justice of the Peace. *Id.* at 35, 745 P.2d at 93. The court found the judge's due process rights had been violated when two members of the Commission voted for his removal without reviewing all of the evidence. *Id.* at 39, 745 P.2d at 97. Clark's reliance on *Ackel* is misplaced. The judge in *Ackel* was not entitled to due process because he was an elected official but rather because the Rules of the Commission on Judicial Qualifications required he receive notice and a right to be heard. *See* Ariz. R. Comm'n Jud. Conduct 20–29.

8. Other courts have held that elected officials have a protectable property right in elected office so that the protections of due process apply. *See Crowe v. Lucas,* 595 F.2d 985, 993 (5th Cir.1979); *Gordon v. Leatherman,* 450 F.2d 562, 565 (5th Cir.1971); *City of Ludowici v. Stapleton,* 258 Ga. 868, 375 S.E.2d 855, 856 (1989); *Eaves v. Harris,* 258 Ga. 1, 364 S.E.2d 854, 857 (1988). One commentator has noted that in so doing these courts have created a federal cause of action which means the "procedural aspects of a state's internal political administration" become subject to federal jurisdiction. Mark R. Fitzgerald, Comment, *Should Elected Officials Have a Property Interest in Their Positions?,* 1995 U. Chi. Legal F. 365, 366 (1995).

due regard for the authorities and duties of the constable. Providing notice, an opportunity to be heard before implementation of disciplinary action,[9] and an explanation of why that action is necessary is, in our view, not only consistent with a presiding judge's obligation to act reasonably but is also a measure of its exercise.

¶ 32 The procedures a presiding judge must take when implementing corrective action over a constable are required for additional reasons: notice and an opportunity to be heard ensure governmental transparency and accountability. The public has a right to know how their constables are performing the duties of their office, and how those duties and their performance are being supervised and disciplined by the presiding judge. And, requiring the presiding judge to explain in a sufficiently detailed manner why he or she has taken corrective action also ensures transparency and accountability by allowing for meaningful judicial review. As we have explained:

> Requiring findings of basic facts by an administrative agency assures more careful administrative consideration, protects against careless and arbitrary action, assists parties in planning their cases for rehearing and judicial review and keeps such agencies within their jurisdiction.

*Civil Serv. Comm'n of Tucson v. Livingston,* 22 Ariz.App. 183, 188, 525 P.2d 949, 954 (1974). Although we made these observations in the context of an administrative appeal from an agency ruling, they are equally applicable here.

■ ¶ 33 The Presiding Judge implemented the supervisory actions without notice to Clark, without giving Clark an opportunity to be heard, and without explaining why he acted as he did. On review, the superior court inferred reasons for the supervisory action. See *supra* ¶ 14. That inference was not based on any evidence that the Presiding Judge had implemented the supervisory actions because of the Injunction, the Reprimand, or because of any complaints about Clark. For all these reasons,

the Presiding Judge was not entitled to summary judgment.

### III.   County Defendants

■ ¶ 34 On appeal, Clark argues the County Defendants were also not entitled to summary judgment because her quo warranto and special action claims made them necessary parties. In response the County Defendants essentially argue we should affirm summary judgment in their favor because they did not take the supervisory actions, only the Presiding Judge did, and therefore, they have "no business" in this litigation. We agree.

¶ 35 The focus of Clark's complaint concerned the supervisory actions taken by the Presiding Judge. The County Defendants did not take those actions. Although the County Defendants provided constable services to the court in Clark's absence, they did not act in excess of their jurisdiction because they had no jurisdiction to exercise over Clark.

### CONCLUSION

¶ 36 For the foregoing reasons, we hold the supervisory actions were within the supervisory authority granted to the Presiding Judge. However, this supervisory authority must be exercised reasonably and, thus, Clark should have received notice and an opportunity to be heard followed by an explanation of the reasons for the supervisory actions.

¶ 37 We therefore reverse summary judgment in favor of the Presiding Judge and, as against him, remand for further proceedings consistent with this opinion. We affirm, however, summary judgment in favor of the County Defendants.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and MAURICE PORTLEY, Judge.

---

9.   Because each situation will present its own unique circumstances, we do not mean to imply the presiding judge must conduct a formal hearing. Instead, it is within the sound discretion of the presiding judge to determine what kind of opportunity to be heard is appropriate under the circumstances.