NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOHN DANKO, III, *Plaintiff/Appellant*,

*v.*

BRIAN DUMAS, *Defendant/Appellee*.

No. 1 CA-CV 21-0019
FILED 9-14-2021

Appeal from the Superior Court in Maricopa County
No. CV 2020-093942
The Honorable Steven P. Lynch, Judge *Pro Tempore* (Retired)

**AFFIRMED**

COUNSEL

Jeffrey M. Zurbriggen, Phoenix
*Counsel for Plaintiff/Appellant*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Erica Leavitt
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Maurice Portley[1] joined.

---

**C A M P B E L L**, Judge:

¶1        John Danko, III, appeals from the superior court's order dismissing, after an evidentiary hearing, an injunction against harassment that had been issued in his favor against Brian Dumas. For the following reasons, we affirm.

**BACKGROUND**

¶2        After a contentious divorce, Danko petitioned for an injunction against harassment against Dumas, an attorney who resides in South Carolina and represents his ex-wife ("Wife") in post-dissolution litigation. At an ex parte evidentiary hearing on the petition, Danko testified that: (1) Wife and his former mother-in-law ("Mother") stole his mail and damaged his mailbox; (2) Wife, Mother, and Dumas "came to [his] home" and demanded that he pay Wife's garbage bill; (3) Wife emailed him an "angry" demand to pay her garbage bill; (4) after Wife demanded payment of her garbage bill, a 95-gallon refuse bin was dumped on his front lawn; (5) Dumas, acting in concert with Wife and Mother, stole $7,700 from his parents; (6) Wife and Mother stole his company computer; (7) Wife, Mother, and Dumas punched, shoved, and kicked him and hit his children; and (8) Dumas helped Wife steal funds from his retirement account.

¶3        Citing Danko's testimony—that Dumas physically assaulted him and assisted in the unauthorized withdrawal of money from his retirement account—the superior court granted Danko's petition for an injunction against harassment against Dumas. Upon being served with the

---

[1]        The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

injunction, Dumas requested an evidentiary hearing and moved to dismiss the order.

¶4        At the contested hearing, Danko again testified to events that he claimed caused mental and emotional anguish. He testified that he saw unidentified individuals park a van in front of his home, rummage through his mail, and rip his mailbox from its post as they drove away. Through subsequent investigation of the van's license plate number, Danko testified that he discovered the van's owners "worked for a security company that was employed by . . . Dumas."

¶5        Danko also testified that Dumas sent him an email demanding payment for Wife's utility bills. He found the email harassing because he had previously asked Dumas to direct all communications to his attorney. Nonetheless, despite his reluctance to communicate directly with Dumas, Danko testified that he later called Dumas to discuss Wife's unpaid bills. According to Danko, Dumas threatened him during the call, stating he would not "walk again" if he did not pay Wife's bills. About a week after he received Dumas' email, Danko returned home from work and found a 95-gallon garbage receptacle dumped on his front lawn, leaving trash strewn across his yard. Although he admittedly had "no proof or evidence" that Dumas, a resident of South Carolina, dumped the trash at his Arizona home, Danko concluded that Dumas, Wife, or Mother likely "asked somebody else to do it."

¶6        Danko further testified that Dumas coerced his parents to write a cashier's check for $7,770 under the threat that Danko would be harmed if they refused to pay. When Danko moved to admit a copy of the cashier's check into evidence, Dumas submitted his own copy of the check, which reflected that Danko's parents issued the check to Dumas' law firm rather than to Dumas personally, as reflected in Danko's exhibit.

¶7        Finally, Danko testified that Dumas "aided and abetted" in Wife's theft of his company computer. In response to questions from the court, Danko acknowledged that he had no evidence that Dumas stole the computer; instead, he explained that Dumas simply "refused" to return it.

¶8        When he finished testifying, Danko rested. At that point, the superior court asked Dumas whether he had "a motion for directed verdict." Responding in the affirmative, Dumas argued that Danko had failed to present any evidence to support a finding that Dumas had harassed, threatened, or intimidated him in any manner. The court agreed and dismissed the injunction against harassment. Danko timely appealed.

**DISCUSSION**

I.      **Administration of Oaths**

¶9        Danko argues that the superior court violated Arizona Rule of Protective Order Procedure ("Protective Order Rule") 38 by failing to administer an oath to both parties at the contested hearing. Asserting "there is no record of the [c]ourt administering the oath," Danko contends that he is "automatically" entitled to a new hearing and that the court's dismissal order must be vacated.

¶10       We review de novo the interpretation and application of court rules. *Duckstein v. Wolf*, 230 Ariz. 227, 231, ¶ 8 (App. 2012). At a contested hearing on a protective order, "[t]he court must administer an oath or affirmation to all parties and witnesses." Ariz. R. Protective Order P. 38(f)(2).

¶11       Danko first challenges the adequacy of the record documenting the superior court's administration of an oath to him. While the contested hearing transcript fails to memorialize the court's precise wording, it does reflect that the court asked Danko to "raise [his] right hand to be sworn in" and "administered" an "oath" to him before he testified. The corresponding minute entry similarly states Danko "is sworn." And Danko, of course, participated in the hearing. Danko posits that a record of an oath being "administered" is inadequate, but has cited no authority for his contention that the record must reflect "every literal word" of an oath, and our research has revealed none. Because the uncontroverted record clearly reflects that the superior court administered an oath to Danko before he testified, there is no factual support for his argument that the court violated Protective Order Rule 38.

¶12       Danko next challenges the superior court's failure to administer an oath to Dumas, noting the transcript "has no reference at all to [Dumas] being sworn in." Although Danko's assessment of the transcript is accurate, he waived any challenge to the court's failure to administer an oath to Dumas by failing to raise the issue in the superior court. *Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007) ("[A]rguments raised for the first time on appeal are untimely and deemed waived."). Nonetheless, even considering the substance of his claim, we find no merit to Danko's challenge because Dumas did not testify. To the extent Dumas made factual assertions while, as a self-represented party, raising speaking objections to Danko's testimony, none of his statements constituted

4

evidence and there is no indication the superior court relied on them as evidence.

## II.  Entry of a Directed Verdict

¶13       Danko argues that the superior court exceeded its legal authority and violated the governing procedural rules by sua sponte soliciting and granting a directed verdict in favor of Dumas.

¶14       Whether the superior court exceeded its authority is a question of law that we review de novo. *Clark v. Campbell*, 219 Ariz. 66, 70-71, ¶ 16 (App. 2008). The Protective Order Rules govern protective-order matters. Ariz. R. Protective Order P. 1. However, the Arizona Rules of Civil Procedure ("Civil Rules") also apply to protective-order matters, to the extent they are not inconsistent with the Protective Order Rules.[2] Ariz. R. Protective Order P. 2.

¶15       When both parties appear at a contested protective-order hearing, the superior court "must ensure" that each party has "an opportunity to be heard, to present evidence, and to call and examine and cross-examine witnesses." Ariz. R. Protective Order P. 38(f)(1). "At the conclusion of the hearing," the court "must state the basis for continuing, modifying, or revoking the protective order." Ariz. R. Protective Order P. 38(f)(4).

¶16       First, Danko asserts that the superior court failed to fulfill its duty under Protective Order Rule 38 to "ensure that both parties testify." This argument reflects a misunderstanding of the rule. Under Protective Order Rule 38, the superior court must provide each party *an opportunity* to be heard (including to testify if they wish), but the court need not compel a party to testify on his own behalf. Here, Danko had the opportunity both to testify and to submit exhibits for the court's consideration. He also had the opportunity to call witnesses, including Dumas, but elected not to do so. By resting his case, Danko waived his right to call Dumas as a witness and risked forgoing any opportunity to question him in the event Dumas chose not to testify on his own behalf. Contrary to Danko's contention, Dumas was also afforded an opportunity to be heard, but he elected to instead move for a directed verdict.

---

[2]       When a protective order is sought in conjunction with a pending family law case, the Arizona Rules of Family Law Procedure govern, to the extent they are not inconsistent with the Protective Order Rules. Ariz. R. Protective Order P. 2.

¶17         Next, Danko contends that a directed verdict "is a creature of criminal law" and that no corresponding civil mechanism exists for ending a trial. As noted by Dumas, however, a 1996 amendment to Civil Rule 50 replaced "directed verdict" with "judgment as a matter of law," and the terms are now used "interchangeably" and "the tests" for granting the motions "are the same." *Warner v. Sw. Deserts Images, LLC*, 218 Ariz. 121, 127, ¶ 8 n.4 (App. 2008) (quoting *Murcott v. Best Western Int'l, Inc.*, 198 Ariz. 349, 356, ¶ 36 (App. 2000)).

¶18         Under Civil Rule 50, the superior court may resolve an issue against a party and enter judgment as a matter of law if the party "has been fully heard on [the] issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Ariz. R. Civ. P. 50(a)(1). In other words, a motion for judgment as a matter of law, or a directed verdict, may be granted when the evidence presented by the nonmoving party has so little probative value that, under the applicable burden of proof, a reasonable finder of fact could not agree with the conclusion advanced by the proponent of the claim. *Warner*, 218 Ariz. at 131, ¶ 25.

¶19         Pointing to Civil Rule 50's "jury trial" language, Danko contends that the rule has no application to protective-order proceedings because they are tried to the bench, not a jury. Without question, Civil Rule 50 contemplates a jury trial, but Danko has failed to cite any substantive or principled basis to preclude the superior court, as fact-finder, from determining that a plaintiff, who has been afforded a full opportunity to be heard, has failed to provide "a legally sufficient evidentiary basis" to support an injunction against harassment. Had Dumas simply declined to present a defense and rested and then argued as a matter of law that Danko had failed in his obligations, as he was unquestionably permitted to do under the governing rules, the effect would have been the same. Put simply, there is no valid reason to preclude the court from entertaining a defendant's motion for directed verdict (or, perhaps more accurately, for a judgment as a matter of law) in a contested protective-order proceeding once the plaintiff has rested.

¶20         Finally, Danko asserts that the superior court violated Protective Order Rule 38 by prematurely dismissing the injunction for harassment before the conclusion of the hearing. But Danko had rested, Dumas had elected to press the motion before presenting any evidence, and the court had heard argument on that motion from both parties. Moreover, Danko has not argued he was prevented from presenting his case in chief or made any avowal about evidence he now claims he should have been

allowed to present. The evidentiary portion of the hearing ended when Danko rested and the hearing itself concluded when the court granted Dumas' motion for directed verdict. Therefore, the court's ruling dismissing the injunction against harassment was not premature.

¶21 In sum, applying both the Protective Order Rules and the Civil Rules to this case, we find no merit to Danko's contention that the superior court exceeded its authority or committed reversible error by entering a directed verdict in Dumas' favor.

### III. Dismissal of the Injunction Against Harassment

¶22 Danko challenges the superior court's dismissal of the injunction against harassment, asserting he presented credible evidence that Dumas engaged in multiple acts of harassment. Viewing the facts "in the light most favorable to upholding the [superior] court's decision," we will reverse only if the record "is devoid of competent evidence to support the decision." *Savord v. Morton*, 235 Ariz. 256, 259, ¶ 10 (App. 2014) (citation omitted).

¶23 To uphold the injunction against harassment, the superior court had to find that Dumas harassed Danko. *See* A.R.S. § 12-1809(E). In this context, harassment is defined as a "series of acts . . . directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person and serves no legitimate purpose." A.R.S. § 12-1809(S)(1)(a). With this definition in mind, we consider each allegation Danko raised at the hearing.

¶24 First, Danko testified that Dumas vicariously rummaged through his mail and damaged his mailbox, asserting he had unspecified "receipts and documentation" demonstrating that Dumas had paid unknown individuals who purportedly committed the offenses. When Dumas objected to Danko's testimony for lack of foundation, the court sustained the objection. Apart from being unsubstantiated, Danko's testimony at the hearing also contradicted his prior testimony. At the initial hearing on his petition for an injunction, Danko testified, unequivocally, that he witnessed Wife and Mother steal his mail and damage his mailbox, not Dumas or his alleged agents. On this record, Danko failed to provide any credible evidence that Dumas, vicariously or otherwise, stole his mail and damaged his mailbox.

¶25 Second, Danko testified that Dumas sent him a harassing email. After Danko read Dumas' email aloud in open

court—"[I]mmediately pay all the utilities for [Wife's] household now."—the superior court stated, "[a]nd that's all--that's all it was." Danko has not shown the superior court erred in finding the email would not cause a reasonable person to be seriously alarmed, annoyed or harassed, as required to constitute harassment under A.R.S. § 12-1809(S)(1)(a). We also agree with the superior court, Danko's account simply "doesn't make sense." On this record, Danko failed to provide any credible evidence that Dumas sent him a harassing email or threatened him with violence over the phone.

¶26         Third, Danko testified that Dumas probably "asked somebody" to dump trash in his front yard. But Danko then admitted that he had absolutely "no proof or evidence" to support this allegation.

¶27         Fourth, Danko testified that Dumas coerced his parents to write a cashier's check. But the superior court properly noted that his parents were not listed on the injunction against harassment, meaning the court lacked jurisdiction to consider any purported coercion of his parents. Moreover, Danko was not able to connect the alleged coercion of his parents to his purported harassment claims. Again, Danko has shown no error.

¶28         Finally, Danko testified that Dumas "aided and abetted" Wife's theft of his company computer. But Danko admitted he had no evidence that Dumas had any role in the theft of the computer. Instead, he alleged that Dumas "refused" to "return it." On this record, no credible evidence supports Danko's allegations that Dumas helped steal the computer, possessed the computer, or withheld it.

¶29         In sum, Danko failed to present any credible allegations of harassment against Dumas. Because none of Danko's claims were supported by substantial evidence, the superior court did not err by dismissing the injunction against harassment.

## CONCLUSION

¶30         For the foregoing reasons, we affirm the superior court's dismissal of the injunction against harassment. Both parties request an award of attorneys' fees on appeal without citing any authority to support their requests. Because a party "must specifically state the statute, rule, decisional law, contract, or other provision authorizing an award of

attorneys' fees," we deny both requests. ARCAP 21(a)(2). However, we award Dumas, as the prevailing party, his taxable costs on appeal upon compliance with ARCAP 21(a).



AMY M. WOOD • Clerk of the Court
FILED: AA