IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, a
Missouri corporation; THOMAS and KAREN MOORE, a California
partnership, dba TOM MOORE TRANSPORTATION; JASMINE, LLC, a
Missouri limited liability company; and K&S TRUCKING LLC, a
Wyoming limited liability company, on behalf of themselves and others
similarly situated, *Plaintiffs/Appellants*,

*v.*

PACIFIC FINANCIAL ASSOCIATION, INC., a California corporation;
and FEDERAL SERVICE CORPORATION, an Arizona corporation,
*Defendants/Appellees*.

No. 1 CA-CV 14-0567
FILED 1-3-17

---

Appeal from the Superior Court in Maricopa County
No. CV2013-000615
The Honorable J. Richard Gama, Judge *Retired*

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

---

COUNSEL

Campbell Law Group Chartered, Phoenix
By Brian J. Campbell
*Counsel for Plaintiffs/Appellants*

The Cullen Law Firm, PLLC, Washington, D.C.
By Daniel E. Cohen
*Counsel Pro Hac Vice for Plaintiffs/Appellants*

Stinson Leonard Street LLP, Phoenix
By Lonnie J. Williams, Jr.
*Counsel for Defendants/Appellee*s

---

**OPINION**

---

Presiding Judge Donn Kessler delivered the opinion of the Court, in which Judge Patricia K. Norris and Judge Andrew W. Gould joined.

---

**K E S S L E R**, Judge:

**¶1** Appellants Owner-Operator Independent Drivers Association ("Association") and several of its members (collectively, "Owner-Operator") appeal the superior court's dismissal of their complaint pursuant to Arizona Rules of Civil Procedure ("Rule") 12(b)(6), refusal to allow them to amend their complaint, and award of attorneys' fees. For the following reasons, we affirm the dismissal of Owner-Operator's statutory claims; reverse and remand to allow Owner-Operator to assert common law claims of breach of fiduciary duty and negligence; and vacate the award of attorneys' fees.

## FACTUAL AND PROCEDURAL HISTORY

**¶2** Appellants, with the exception of the Association, are motor carriers that hauled freight pursuant to contractual agreements with a freight broker, Alliance Transportation, Inc. ("Alliance").[1] As a condition of federal registration under 49 U.S.C. § 13904, freight brokers must file with the United States Secretary of Transportation a "bond, insurance policy, or other type of security approved by the Secretary." 49 U.S.C. §§ 13904, 13906(b) (2005).[2] Federal Motor Carrier Safety Administration ("FMCSA") regulations specify that a broker may choose either to file a surety bond or establish a trust fund of $10,000 to satisfy this security requirement. 49 C.F.R. § 387.307 (2008). In addition to providing the surety bond or trust fund as security, brokers must file evidence of the security's existence with

---

[1] Owner-Operator is a non-profit trade association that appears in its associational representative capacity.

[2] The FMCSA granted Alliance authority to broker freight loads on April 22, 2008, so we refer to statutes in effect at that time.

2

the Secretary using the FMCSA's prescribed Form BMC 85 ("BMC 85 Form").  49 C.F.R. § 387.307(b).

¶3            Alliance chose to provide the required $10,000 security by way of a trust fund.  Alliance and Appellee Pacific Financial Association, Inc. ("Pacific") executed a BMC 85 Form in April 2008 (the "Agreement"), creating a trust fund ("Trust").  Pursuant to the express terms of the Agreement, Alliance was Trustor and Pacific was Trustee.  Motor carriers who had contracted with Alliance and to whom Alliance was liable for damages pursuant to the Agreement were the beneficiaries.

¶4            Alliance stopped paying motor carriers who had transported freight pursuant to their contracts with Alliance in the fall of 2011.  As of October 19, 2011, the aggregate of unpaid claims against the Trust, premised upon deliveries before that date, exceeded the $10,000 balance of the Trust. Pacific did not notify any Trust beneficiaries that the security had been exhausted, take steps to trigger Alliance's duty to replenish the Trust, or serve notice to terminate the Trust.  In December 2011 and January 2012, Appellants, with the exception of the Association, delivered loads entitling them to payment from Alliance.  These invoices were not paid, however, and the carriers filed claims with Pacific against the Trust during January and February 2012.  Meanwhile, Alliance filed for bankruptcy protection on January 11, 2012.

¶5            Pacific filed a notice of cancellation of the Trust with the FMCSA on January 23, 2012, at least ninety-six days after Pacific knew that the aggregate claims exceeded the $10,000 balance.  The Trust was cancelled on February 22, 2012.  As of March 2012, Pacific had made no payments from the Trust on pending claims.

¶6            Owner-Operator filed this action seeking declaratory relief, injunctive relief, and damages. The complaint alleged that Pacific owed the motor carriers, as beneficiaries, certain duties set forth in the Agreement; in Arizona Revised Statutes ("A.R.S.") sections 14-10801, 14-10802, 14-10803, 14-10811, 14-10813, and 14-10817; and by virtue of its "special relationship" with the Appellants.  It also alleged that Federal Service Corporation aided and abetted Pacific's tortious conduct and acted negligently by failing to properly pay claims against the Trust.[3]  The complaint asserted claims for

---

[3]      Appellee Federal Service Corporation processes claims by shippers and motor carriers against the BMC 85 trusts for which Pacific is trustee. Unless otherwise noted, we refer to Pacific and Federal collectively as "Appellees."

breach of fiduciary duty, breach of the duty of good faith and fair dealing, negligence, and aiding and abetting tortious conduct.

¶7 Appellees moved to dismiss the complaint under Rule 12(b)(6). Appellees argued that the Agreement was not a "trust" under Arizona law and that, accordingly, Appellants were not "beneficiaries" and were not owed any of the duties alleged in the complaint.[4]

¶8 The superior court dismissed the complaint on the grounds that the Agreement did not create a "trust" under the Arizona Trust Code, A.R.S. § 14-10101, et seq. (2015) ("Trust Code").[5] It found that the Agreement was a "trust[] for the primary purpose of paying debts," a category of trust excluded from the Trust Code pursuant to A.R.S. § 14-1201(58), and that "even if [the Agreement was] an 'express trust,' it [was] not a 'trust' under A.R.S. § 14-1201(58)." Section 14-1201(58) provides that while the definition of a trust includes an express trust, it excludes "security arrangements, liquidation trusts and *trusts for the primary purpose of paying debts*, dividends, interest, salaries, wages, profits, pensions or employee benefits of any kind." (emphasis added).

¶9 Owner-Operator filed a Motion for a New Trial and a Motion to Amend Complaint to specifically assert claims based on Arizona common law and the Trust Code. In their Joint Response, Appellees argued that amendment would be futile because (1) the definition in A.R.S. § 14-1201(58) expressly or by necessary implication supersedes any contrary definition of what a trust is in Arizona, and (2) that the BMC 85 Form is not a trust at all, but rather a contract for the payment of debt. The superior court denied both motions "for the reasons stated in [Appellees'] Joint Response" to the motions.

¶10 Appellees then filed an Application for an Award of Attorneys' Fees and Costs. The superior court awarded Appellees' attorneys' fees pursuant to A.R.S. § 12-341.01, stating "the claims asserted

---

[4] While the Agreement was not attached to the complaint, but to the motion to dismiss, the superior court did not need to convert the motion to dismiss to a motion for summary judgment because the Agreement was central to the complaint and all the parties were on notice of it. *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 64, ¶ 14 (App. 2010) (citation and quotation omitted).

[5] Unless amended in pertinent part after the underlying events, we cite to the current version of any Arizona statutes.

by [Appellants] were based on agreements entered into by these parties and thus 'arose out of contract.'"

¶11        Owner-Operator timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) and (A)(9) (2016).

## DISCUSSION

¶12        Owner-Operator argues the superior court erred in dismissing their claims alleging breach of fiduciary duty and negligence, refusing to allow their claims to proceed under common law, and awarding attorneys' fees to Appellees.

I.        Motion to Dismiss

¶13        We review dismissal of a complaint under Rule 12(b)(6) de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012).   We assume the truth of all well-pled factual allegations in the complaint and all reasonable inferences therefrom.  *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008) (citations omitted).  We will affirm the dismissal only if "as a matter of law . . . plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998) (citation omitted).

¶14        "We review issues of statutory construction de novo." *Short v. Dewald*, 226 Ariz. 88, 93, ¶ 26 (App. 2010) (citation omitted).  In construing a statute, our goal is to give effect to the legislative intent, examining the statute's "individual provisions in the context of the entire statute to achieve a consistent interpretation." *Id.* at 93-94, ¶ 26 (citations and quotation omitted). "[W]e look to the plain language as the most reliable indicator of meaning." *Powers v. Carpenter*, 203 Ariz. 116, 118, ¶ 9 (2002) (citation omitted). When the language of a statute is clear and unambiguous, a court should not look beyond the language, but rather "simply apply it without using other means of construction, assuming that the legislature has said what it means." *Hughes v. Jorgenson*, 203 Ariz. 71, 73, ¶ 11 (2002) (citation and quotation omitted).

¶15        Owner-Operator argues that the Trust (1) is a federal statutory trust that is not excluded from the Trust Code, and (2) is not a "trust[] for the primary purpose of paying debts."  We disagree.

¶16        The Arizona Trust Code is located in Chapter 11 of Title 14 of the Arizona Revised Statutes.  Pursuant to A.R.S. § 14-10102, included within the scope of the Trust Code are all trusts created pursuant to a

statute. However, as noted above, A.R.S. § 14-1201(58), found in Chapter 1 of Title 14, expressly provides that while the definition of a trust includes an express trust, it excludes "security arrangements, liquidation trusts and *trusts for the primary purpose of paying debts*, dividends, interest, salaries, wages, profits, pensions or employee benefits of any kind." (emphasis added). Owner-Operator argues dismissal was improper because (1) the Trust is a "statutory trust, mandated by federal law" and thus included within § 14-10102, and (2) the Trust Code does not exclude such "federal statutory trusts." Thus, Owner-Operator contends the two sections can be consistently read to permit the application of the Trust Code to any trusts created pursuant to statute regardless of whether the trust is one to pay a debt.[6]

¶17 Even assuming the Trust is a "trust[] created pursuant to a statute," we are unpersuaded by Appellants' argument. The definitions found in A.R.S. § 14-1201 apply to all of Title 14. A.R.S. § 14-1201 ("In this title, unless the context otherwise requires . . . ."). The definition of "trust" in § 14-1201(58) therefore applies to, and limits, the Trust Code, including § 14-10102. Thus, although the Trust Code includes "trusts created pursuant to a statute" within its scope, any trusts excluded from the definition of "trust" in § 14-1201 are also excluded from this category. Accordingly, even if the Trust is a "trust[] created pursuant to a statute," it is excluded from the Trust Code if it is a security arrangement or a trust created primarily to pay a debt under A.R.S. § 14-1201(58).

¶18 Owner-Operator also argues the court erred because the Trust was not created "for the primary purpose of paying debts." Owner-Operator focuses on the language of A.R.S. § 14-1201(58) excluding "liquidation trusts and trusts for the primary purpose of paying debts, dividends, interest, salaries, wages, profits, pensions or employee benefits of any kind" from the Trust Code. Owner-Operator contends that "trusts for the primary purpose of paying debts" is not a standalone category, but is limited to "liquidation trusts." In the superior court, Owner-Operator

---

[6] Appellees assert Owner-Operator never argued in the superior court that the Trust was an express statutory trust and has thus waived this issue. We find no waiver. While Owner-Operator did not refer to § 14-10102's inclusion of trusts created pursuant to a statute in responding to the motion to dismiss, it did assert that the Trust was created pursuant to federal statutes. Owner-Operator also argued that the Trust was created pursuant to statute in its amended complaint and in its reply in support of its motion to amend and for new trial.

contended that "liquidating trusts are indigenous to bankruptcy law; they are designed for the primary purpose of liquidating a bankruptcy estate."[7]

¶19        We disagree with Owner-Operator.  We cannot read "liquidation trusts and trusts for the primary purpose of paying debts" as one category.  Both clauses use the word "trusts," thus indicating that the Legislature intended the clauses to refer to different types of trusts, one for liquidation trusts and the other for trusts with the primary purpose of paying debts.  Owner-Operator's argument conflates the two types of trusts, rendering the reference to trusts in each clause superfluous.  We will not read a statute in such a way as to render any of its language superfluous. *Thomas & King, Inc. v. City of Phoenix*, 208 Ariz. 203, 206, ¶ 9 (App. 2004) (citation omitted).  Accordingly, we construe "trusts for the primary purpose of paying debts" as a standalone exclusion from the definition of "trust," and therefore agree with the superior court's interpretation of A.R.S. § 14-1201.

¶20        We also agree with the superior court that the Trust's primary purpose was to pay debts.  Looking to the express language of the Agreement, Pacific's duties were to "*pay . . .* directly to a shipper or motor carrier any sum or sums which Trustee, in good faith, determines that the Trustor has failed to pay"; "maintain a record of all financial transactions concerning the Fund"; and "immediately give written notice to the FMCSA of all lawsuits filed, judgments rendered, and payments made under this trust agreement and of any failure by Trustor to replenish the trust fund as required [by the Agreement]."  Although Pacific also "may [have], within its sole discretion, invest[ed] the funds comprising the corpus," this was not a mandatory obligation, as evidenced by the use of "may" rather than "shall." *See Walter v. Wilkinson,* 198 Ariz. 431, 432, ¶ 7 (App. 2000) (citations omitted).  Pacific's mandatory obligations under the Agreement therefore all were focused on the central obligation of paying debts; Pacific had to make payments to qualifying shippers or carriers, and it had to notify the

---

[7]        On appeal, Owner-Operator also argues that the clause excluding trusts for the primary purpose of paying debts was limited to employee-benefit trusts under A.R.S. § 14-1201(58).  We do not see how trusts primarily for paying debts can be limited to employee-benefit trusts under the statute.  Both clauses refer to specific types of trust.  Thus trusts for the primary purpose of paying debts are independent of employee-benefit trusts.

FMCSA if Alliance failed to maintain the minimum capital to allow it to do so.

¶21    In arguing that the Trust's purposes are broader than the mere payment of debt, Owner-Operator refers to the Agreement's preamble[8] and the history of 49 C.F.R. § 387.307.[9]  Those arguments are unavailing, however, and actually support the conclusion that this kind of trust is not included within the Trust Code.  Both the preamble and 49 C.F.R. § 387.307's history emphasize the importance of the required security in providing financial security.  Indeed, the I.C.C.[10] decision cited by Appellants refers to the I.C.C.'s initial discussion of the security requirement, in which the I.C.C. clarified that "[a]uthorized property brokers are required to provide financial security protecting the public . . . against *failure on their part to pay transportation charges* incurred in carrying out their contracts and agreements for the arranging of transportation by motor carriers."  Clarification of Ins. Regulation, 3 I.C.C. 2d 689, 689-90 (I.C.C. Apr. 9, 1987).

¶22    After considering both the express terms of the Agreement and 49 C.F.R. § 387.307's regulatory history, we conclude that the primary purpose of the Trust was ensuring and effectuating the payment of debts and the Trust is essentially a security arrangement.  As such, it is excluded

---

[8]    The preamble states that the Agreement "is written to assure compliance by the Trustor as a licensed Property Broker of Transportation by motor vehicle with 49 U.S.C. [§] 13906(b), and the rules and regulations of the [FMCSA] relating to insurance or other security for the protection of motor carriers or shippers."

[9]    In which the Interstate Commerce Commission ("I.C.C.") acknowledges that "Congress' primary purpose for regulating motor transportation brokers has been to protect carriers and the travelling and shipping public against dishonest and *financially unstable* middlemen in the transportation industry."  Prop. Broker Sec. for the Prot. of the Pub. 49 C.F.R. Part 1043, 4 I.C.C. 2d 358, 358 (I.C.C. Mar. 14, 1988) corrected, Ex Parte MC 5, 1988 WL 226071 (I.C.C. Mar. 14, 1988) and corrected sub nom. Prop. Broker Sec. for the Prot. of the Pub. (I.C.C. Mar. 31, 1988) (emphasis added).

[10]    The I.C.C. was terminated at the end of 1995.  Many of its remaining functions were transferred to the National Surface Transportation Board.  I.C.C. Termination Act of 1995, PL 104-88, Dec. 29, 1995, 109 Stat. 803; *see* 49 U.S.C. § 1302.

from the Trust Code pursuant to A.R.S. § 14-1201(58). Our conclusion is further supported by our discussion *infra*, ¶¶ 28-30, that the Trust Code was not intended to include commercial trusts such as the Trust here or to abrogate common law actions for commercial trusts outside the Trust Code. Accordingly, we find that the superior court properly dismissed Appellants' statutory claims under the Trust Code.

II.     Refusal to Allow Appellants' Claims to Proceed Under Common Law

**¶23**     Appellants argue that the superior court erred by failing to acknowledge that Appellants' original complaint did not exclude common law claims, or by refusing to permit them to amend their complaint to explicitly allege such claims. We agree the superior court erred in denying the motion to amend the complaint to assert common law claims.

**¶24**     When a motion to amend a pleading is denied, we review the denial for an abuse of discretion. *MacCollum v. Perkinson*, 185 Ariz. 179, 185 (App. 1996) (citation omitted). Generally, denying leave to amend is an abuse of discretion when a party "merely seeks to add a new legal theory." *Id*. (citation omitted). However, denial of a motion to amend is proper if the amendment would be futile. *Bishop v. State Dep't of Corr.*, 172 Ariz. 472, 474-75 (App. 1992) (citation omitted).

**¶25**     In response to the motion to amend the complaint, Appellees argued that the amendment would be futile because (1) the definition in A.R.S. § 14-1201(58) expressly or by necessary implication supersedes any contrary definition of what a trust is in Arizona, and (2) that the BMC 85 Form is not a trust at all, but rather a contract for the payment of debt.[11] The superior court denied the motion to amend for the reasons asserted by the Appellees. Accordingly, we address both reasons relied on by the superior court.

---

[11]     The original complaint did not expressly assert common law claims, but only referenced federal statutes and the Trust Code. Accordingly, we address on appeal whether the amended complaint stated a cause of action if the Trust is a common law trust under Arizona law. We do not opine whether the Trust fits into such a definition as that must await further factual development on remand.

A. Section 14-1201(58) did not Abrogate the Common Law of Trusts

**¶26**     Appellees argue that the definition of "trust" in A.R.S. § 14-1201(58) either expressly or by necessary implication modifies the common law such that certain instruments that might be called "trusts" are not treated as actually being trusts under Arizona law. We disagree.

**¶27**     The common law, except when "repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state . . . is adopted and shall be the rule of decision in all courts of this state." 1907 Ariz. Sess. Laws, ch. 10, § 8, *codified at* A.R.S. § 1-201 (2002). To change the common law by statute, the Legislature must do so expressly or by necessary implication. *Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, 422, ¶ 12 (2004) (citations omitted). Absent a clear manifestation of legislative intent to abrogate the common law, we interpret statutes with "every intendment in favor of consistency with the common law." *Id.* (citation and quotation omitted).

**¶28**     Section 14-1201(58)'s definition of "trust" did not abrogate the common law of trusts for trusts excluded from the Trust Code. First, A.R.S. § 14-1102(B)(4) explains that one of Title 14's purposes is "to facilitate use and enforcement of *certain trusts*." A.R.S. § 14-1102(B)(4) (2016) (emphasis added). This indicates that the provisions of Title 14, including the Trust Code, apply to "certain trusts" but not to others, not that the common law was abrogated as to trusts outside the scope of the Trust code.

**¶29**     This conclusion is further supported by two other sections of Title 14. Section 14-1103 provides that "[u]nless displaced by the particular provisions of this title, the principles of law and equity supplement its provisions." A.R.S. § 14-1103 (2016). Section 14-10106 states that "[t]he common law of trusts and principles of equity supplement this chapter, except to the extent modified by this chapter or another statute of this state." A.R.S. § 14-10106(A) (2016). In light of that language, the Legislature did not clearly manifest an intent to abrogate the common law as it applied to trusts excluded from the Trust Code.

**¶30**     We find further support for this conclusion from learned treatises on the law of trusts. Sections 14-1201(58), 14-1103, and 14-10106 are based on the Uniform Probate Code ("UPC") and the Uniform Trust

Code ("UTC"). *See* preface preceding A.R.S. §§ 14-1101 and 14-10101.[12] As the commentary to § 102 of the UTC explains, the language of which section is identical to A.R.S. § 14-10102 dealing with the scope of the Trust Code,[13] generally commercial trusts are not included in the UTC but are subject to other pertinent laws on trusts:

> The Uniform Trust Code is directed primarily at trusts that arise in an estate planning or other donative context, but express trusts can arise in other contexts. For example, a trust created pursuant to a divorce action would be included, even though such a trust is not donative but is created pursuant to a bargained-for exchange. Commercial trusts come in numerous forms, including trusts created pursuant to a state business trust act and trusts created to administer specified funds, such as to pay a pension or to manage pooled investments. Commercial trusts are often subject to special-

[12] Section 14-1201(58) is essentially identical to § 1-201(54) of the UPC, which provides, in pertinent part, that the term "trust" for purposes of the two codes excludes "custodial arrangements pursuant to [each state should list its legislation, including that relating to [gifts] [transfers] to minors, dealing with special custodial situations], business trusts providing for certificates to be issued to beneficiaries, . . . security arrangements, liquidation trusts, and trusts for the primary purpose of paying debts, dividends, interest, salaries, wages, profits, pensions, or employee benefits of any kind, and any arrangement under which a person is nominee or escrowee for another." UPC § 1-201(54) (amended 2010). Similarly, A.R.S. § 14-10106 is essentially identical to § 103 of the UPC, which provides that "[u]nless displaced by the particular provision of this [Code], the principles of law and equity supplement its provisions." *Id.* 1-103. Finally, A.R.S. § 14-10106 is essentially identical to § 106 of the UTC with the latter providing that "[t]he common law of trusts and principles of equity supplement this [Code], except to the extent modified by this [Code] or another statute of this State," UTC § 106 (amended 2010), and the former providing that "[t]he common law of trusts and principles of equity supplement this chapter, except to the extent modified by this chapter or another statute of this state," A.R.S. § 14-10106(A).

[13] Section 102 of the UTC and A.R.S. § 14-10102 both provide that the code "applies to express trusts . . . and trusts created pursuant to a statute, judgment or decree that requires the trust be administered in the manner of an express trust."

purpose legislation and case law, which in some respects displace the usual rules stated in this Code.

UTC § 102 cmt. (amended 2010). The above commentary cites to one leading commentator who has explained that commercial trusts, as opposed to trusts based on gratuitous transfers of property, are ubiquitous and the "familiar standards of trust fiduciary law protect trust beneficiaries of all sorts, regardless of whether the trust implements a gift or a business deal (unless, of course, the terms of the transaction expressly contraindicate)." John H. Langbein, *The Secret Life of Trusts: The Trust as an Instrument of Commerce*, 107 Yale L.J. 165, 166 (1997).[14] Moreover, as the reporter for the committee of the National Conference of Commissioners on Uniform State Laws has stated, trusts "are increasingly being used as tools for facilitating commercial transactions . . . [and t]he UTC is not directed specifically at commercial trusts." David M. English, *The Uniform Trust Code (2000): Significant Provisions and Policy Issues*, 67 Mo. L. Rev. 143, 149 (2002). Rather, "[t]he extent to which commercial trusts will be subject to the Code will depend on the type of trust and the laws, other than the UTC, under which the trust was created." *Id.*

¶31 Accordingly, we conclude that any trusts excluded from the definition of "trust" in A.R.S. § 14-1201(58), like the Trust here, continue to be guided by the principles of law and equity, including the common law of trusts.

       B.     The Agreement is not a Contract for the Benefit of Third Parties

¶32 Appellees argue that even if A.R.S. § 14-1201(58) does not abrogate the common law as it applies to trusts excluded from the Trust Code, the amendment to the complaint would still be futile because the Trust is not a trust, but rather a contract for the payment of debt. We disagree.

¶33 Arizona courts follow the Restatement of the Law unless the Legislature or our courts have adopted a contrary rule. *In re Naarden Tr.*, 195 Ariz. 526, 528, ¶ 8 (App. 1999), *as amended* (June 16, 1999) (citation

---

[14] As that same commentator notes, "one of the great attractions of the trust for the transaction planner who is designing a business deal is the convenience of being able to absorb these standards into the ground rules for the deal, merely by invoking the trust label." Langbein, *The Secret Life of Trusts*, 107 Yale L.J. at 166.

omitted). The Restatement (Third) of Trusts distinguishes between a contract and a trust:

> When a person pays money to another with instructions that the latter is to pay a debt or the debts of the former to one or more third persons, *it depends on the manifestation of intention of the parties* whether a trust or an agency or a different type of contract is created. If the person receiving the money is entitled to use it as his or her own, the transaction merely creates a contract for the benefit of the payor's creditor . . . . *If the person receiving the money is not entitled to use it for his or her own purposes, a trust . . . is created.*

Restatement (Third) of Trusts § 5 cmt. i (2003) (emphases added).

¶34 "[W]hen a trust is created by a written instrument, the intention of the settlor is ascertained from the express language of the instrument, and [a] court will not go outside the instrument in an attempt to give effect to what it conceives to have been the actual intent or motive of the settlor." *State ex rel. Goddard v. Coerver*, 100 Ariz. 135, 141 (1966). Only when a testator or other transferor fails to manifest an intention to impose enforceable duties on the transferee is no trust created. Restatement (Third) of Trusts § 13 (2003); *see Lane Title & Tr. Co. v. Brannan*, 103 Ariz. 272, 276-77 (1968) (citation omitted) *(*explaining that the essential elements of a trust are: a competent settlor and a trustee; a clear and unequivocal intent to create a trust; an ascertainable trust res; and sufficiently identifiable beneficiaries).

¶35 The Agreement meets all of elements of a trust rather than a mere contract. First, the Agreement is entitled the "Property Broker's *Trust Fund Agreement* Under 49 U.S.C. 13906 or Notice of Cancellation of the Agreement." (emphasis added).[15] Throughout the Agreement, Pacific and Alliance are referred to as "Trustee" and "Trustor," respectively. By signing the Agreement, Pacific "acknowledge[d] the receipt of . . . $10,000, *to be held in trust* under the terms and conditions set forth herein." (emphasis added). The body of the Agreement imposes mandatory duties

---

[15] Although use of the terms "trust" or "trustee" do not necessarily indicate an intention to create a trust, evidence of Alliance and Pacific's intent to create a trust reaches beyond the mere use of these words. *State ex rel. Goddard*, 100 Ariz. at 141-42.

on Pacific,[16] and the Agreement "inure[s] to the benefit of any and all motor carriers or shippers to whom the Trustor may be legally liable for any of the damages . . . described [by the Agreement]." In addition, the Agreement acknowledges the fiduciary relationship of trustor and trustee, specifying that if Pacific decided to invest the fund comprising the trust corpus, it must have done so "consistent with its fiduciary obligation under applicable law." Finally, Pacific was not entitled to use the funds comprising the trust corpus for its own purposes: "any payments made pursuant to the security provided [by the Agreement] will be made exclusively and directly to shippers or motor carriers that are parties to contracts, agreements or arrangements with Trustor [Alliance]," and "[a]ll sums due to [Pacific] as a result, directly or indirectly, of the administration of the trust fund under [the Agreement] shall be billed directly to Trustor and in no event shall said sums be paid from the corpus of the trust fund herein established." The Agreement bears all the hallmarks of intent to create a trust rather than a contract for the benefit of third parties.[17]

---

[16]     *See supra* ¶ 20.

[17]     Our conclusion is consistent with *In re Naarden Trust*, in which we dealt with whether a complaint arising from an alleged breach of what was an undisputed trust agreement arose out of contract for purposes of an award of attorneys' fees pursuant to A.R.S. § 12-341.01(A). *In re Naarden Tr.*, 195 Ariz at 528, ¶ 3. As we noted, a trustee's duties may derive from the trust instrument (as well as relevant statutes or common law), but they initially stem from the special nature of the relation between trustee and beneficiary. *Id.* at 530, ¶ 15. We explained that one difference between a trust and a contract is that when property is transferred by one person to another who agrees to assume a personal liability to a third person, the agreement is a contract for the benefit of the third person and not a trust. *Id.* at 529, ¶ 10 (quoting Restatement (Second) of Trusts § 14 cmt. f (1959)). We also noted that "[t]he creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract." *Id.* at ¶ 12 (quoting Restatement (Second) of Trusts § 197 cmt. b (1959)). Here, the property—in the form of a $10,000 security—was not transferred to Pacific to assume a personal liability to Owner-Operator and its members. Rather, Pacific's control of the property was to ensure that funds in the corpus were adequate to make payments to Owner-Operator and its members who had contracted with Alliance and to take steps to stop Alliance from contracting in excess of the security. It was only if Pacific failed to take such steps that Pacific could be liable for the amounts Alliance

¶36 Because we find that (1) A.R.S. § 14-1201(58) does not "modify" the common law as to trusts excluded from the Trust Code and (2) the Agreement is at least evidence of the creation of a trust, rather than a contract for the benefit of a third party, we determine that Owner-Operator's proposed amendment of the complaint would not have been futile. Accordingly, we reverse the superior court's denial of Owner-Operator's motion to amend the complaint to assert common law causes of action.

III.    Award of Attorneys' Fees

¶37 Owner-Operator also contends that the superior court erred in awarding Appellees' attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01 because the dispute did not arise out of contract. We agree.

¶38 We review the superior court's award of attorneys' fees and costs for an abuse of discretion. *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17 (App. 2006) (citation omitted). We will uphold the court's award of attorneys' fees and costs if it has "any reasonable basis." *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 261, ¶ 27 (App. 1998) (citations omitted).

¶39 "[T]he undertaking between the settlor and trustee is not properly characterized as contractual and does not stem from the premise of mutual assent to an exchange of promises." *In re Naarden Tr.*, 195 Ariz. at 530, ¶ 15. "Although the trustee's duties may derive from the trust instrument (as well as relevant statutes or common law), they initially stem from the special nature of the relation between trustee and beneficiary." *Id.* A trustee's undertakings or promises in a trust instrument are therefore not normally "contractual," and suits that arise out of a trust relationship are not suits arising out of a contract for purposes of A.R.S. § 12-341.01(A). *Id.* at ¶ 18. Because Appellants' claims arise out of the trust relationship rather than out of contract, we conclude the superior court erred in awarding attorneys' fees pursuant to A.R.S. § 12-341.01(A).

---

owed to Owner-Operator and its members.

The parties' reliance on *In re Arctic Express Inc.*, 636 F.3d 781 (6th Cir. 2011), is misplaced. In *Arctic Express*, the court was dealing with whether amounts kept in certain bank accounts by a carrier were held in trust by the bank for lessees who had leased trucks from the carrier. *Id.* at 785-86. The issue did not involve BMC 85 Form trusts and thus is not dispositive of the issue here.

## CONCLUSION

**¶40**   For the reasons stated, we affirm the superior court's dismissal of Owner-Operator's statutory claims under the Trust Code but remand to allow Owner-Operator to assert common law claims of breach of fiduciary duty and negligence. We also reverse the superior court's award of attorneys' fees pursuant to A.R.S. § 12-341.01. We deny Appellees' request for attorneys' fees and costs on appeal. Upon timely compliance with Arizona Rule of Civil Appellate Procedure 21, we will award Owner-Operator its taxable costs on appeal.



AMY M. WOOD • Clerk of the Court
FILED: AA