IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

---

GABRIEL GARIBAY; DEBORAH MARTINEZ-GARIBAY; AND PIMA COUNTY,
*Petitioners*,

*v.*

HON. KELLIE JOHNSON, JUDGE OF THE SUPERIOR COURT OF THE STATE OF
ARIZONA, IN AND FOR THE COUNTY OF PIMA,
*Respondent*,

*and*

WILLIAM FOX, THE SURVIVING SPOUSE OF ANGELA FOX, DECEASED,
INDIVIDUALLY AND ON BEHALF OF ALL THOSE ENTITLED BY LAW TO RECOVER
FOR THE DEATH OF ANGELA FOX,
*Real Party in Interest.*

No. 2 CA-SA 2023-0091
Filed February 14, 2024

---

Special Action Proceeding
Pima County Cause No. C20231936

**JURISDICTION ACCEPTED; RELIEF GRANTED IN PART AND
DENIED IN PART**

---

COUNSEL

Humphrey & Petersen P.C., Tucson
By Andrew J. Petersen
*Counsel for Petitioner*

Mercaldo Law Firm, Tucson
By John J. Kastner Jr.

and

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Counsel for Real Party in Interest*

---

**OPINION ON RECONSIDERATION**

Judge O'Neil authored the opinion of the Court, in which Judge Sklar and Judge Gard concurred.

---

O' N E I L, Judge:

**¶1**		In this wrongful-death action, Pima County and Gabriel Garibay seek special-action review of the respondent judge's denial of their motion to dismiss plaintiff William Fox's claims against them. We accept jurisdiction and grant partial relief.

## Background

**¶2**		In March 2022, the Pima County Board of Supervisors ("the Board") voted to appoint Deborah Martinez-Garibay as constable to fill a vacant position. When Martinez-Garibay attempted to serve a writ of restitution on tenant Gavin Stansell, accompanied by apartment manager Angela Fox, Stansell shot and killed both women and another resident at the apartment complex. He then killed himself.

**¶3**		Angela's surviving spouse, William Fox, brought a wrongful death action against Gabriel Garibay as Martinez-Garibay's widower, Pima County, and the Arizona Constable Ethics, Standards and Training Board (CESTB). He alleged Martinez-Garibay had negligently and grossly negligently breached her duty "to protect and avoid exposing Angela . . . and the general public to harm" while serving the writ. Fox alleged Pima County was Martinez-Garibay's employer and, thus, pursuant to the doctrine of respondeat superior, vicariously liable for her conduct. Finally, he alleged that Pima County and CESTB had "negligently failed to adequately hire, train, supervise, and monitor" Martinez-Garibay.

**¶4**		Garibay and Pima County moved for a judgment on the pleadings under Rule 12(c), Ariz. R. Civ. P., asserting the Board's decision to appoint Martinez-Garibay is entitled to absolute immunity, Pima County "is not responsible for supervising or training constables," and respondeat

superior does not apply because a constable is "an officer of the court whose duties are imposed by statute." They further asserted Martinez-Garibay had judicial immunity and, in any event, owed no duty to Angela. The respondent judge denied the motion, rejecting the immunity claims and concluding "the facts, as plead, could give rise to a finding by the finder of fact that the County did control Ms. Garibay and she did have a duty to act as a reasonably prudent constable." This petition for special action followed. Special action jurisdiction is appropriate to address whether immunity applies, *see City of Scottsdale v. Mikitish*, 253 Ariz. 238, ¶¶ 4-5 (App. 2022), and other pure questions of law, *see Phx. Newspapers, Inc. v. Ellis*, 215 Ariz. 268, ¶ 9 (App. 2007). *See also* A.R.S. § 12-120.21(A)(4); Ariz. R. P. Spec. Act. 1(a), 3.

## Discussion

¶5        Garibay and Pima County argue the Board is entitled to absolute immunity and "is not vicariously liable for a constable." They also argue Martinez-Garibay is entitled to judicial immunity and owed no duty to Angela. "A motion for judgment on the pleadings . . . tests the sufficiency of the complaint, and judgment should be entered for the defendant if the complaint fails to state a claim for relief." *Giles v. Hill Lewis Marce*, 195 Ariz. 358, ¶ 2 (App. 1999). We review the trial court's ruling de novo, accepting the allegations in the complaint as true. *Save Our Valley Ass'n v. Ariz. Corp. Comm'n*, 216 Ariz. 216, ¶ 6 (App. 2007).

## I.   Legislative Immunity

¶6        Garibay and Pima County assert the Board's appointment decision, pursuant to A.R.S. § 16-230(A)(2), is entitled to absolute legislative immunity under A.R.S. § 12-820.01(A)(1). We review the application of the immunity statute de novo. *See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 163 (App. 1996). "[G]overnmental liability is the rule in Arizona and immunity is the exception," and we "construe immunity provisions narrowly." *Doe ex rel. Doe v. State*, 200 Ariz. 174, ¶ 4 (2001). "Accordingly, we examine the application of this statute to [Fox]'s claims and [Pima County]'s acts with a view to finding immunity only if it clearly applies." *Schabel*, 186 Ariz. at 163.

¶7        Under § 12-820.01(A)(1), a public entity is entitled to absolute immunity for "acts and omissions of its employees constituting . . . [t]he exercise of a . . . legislative function." At oral argument before this court, Garibay and Pima County asserted the Board's appointment of a constable is a legislative act because it is a political question expressly committed by

statute to the Board, a legislative body. Specifically, § 16-230(A)(2) provides, "If a county office becomes vacant, the board of supervisors shall appoint a person of the same political party as the person vacating the office to fill the portion of the term until the next regular general election."

**¶8**        Garibay and Pima County contend that a legislative function is defined according to the nature of the body that is statutorily required to perform it. According to their argument, if the law directly assigns the function to a legislative body, the function is legislative. But in the context of common-law legislative immunity, Arizona courts have defined a legislative function differently. *See Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, ¶¶ 15-16, 21 (App. 2003) (explaining basis for common-law legislative immunity). "Whether an act is 'legislative' depends on the nature of the act," not the body authorized or required by law to perform that act. *Id.* ¶¶ 15, 21 (addressing legislative privilege, which arises from common-law legislative immunity). "[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998); *see also Fields*, 206 Ariz. 130, ¶ 21 (favorably citing *Bogan*). And a legislative body's act that is "related to the legislative process" is not protected unless it bears the "hallmarks of traditional legislation." *State ex rel. Montgomery v. Mathis*, 231 Ariz. 103, ¶¶ 75, 79 (App. 2012) (quoting *Fields*, 206 Ariz. 130, ¶¶ 18, 21). A function is legislative when it reflects "a discretionary, policymaking decision that may have prospective implications." *Fields*, 206 Ariz. 130, ¶ 21.

**¶9**        Although this case involves statutory rather than common-law immunity, we see no reason to depart from this definition. *See Galati v. Lake Havasu City*, 186 Ariz. 131, 135 (App. 1996) (looking to common-law immunity cases to determine scope of statutory immunity under § 12-820.01). Indeed, § 12-820.01 largely codified legislative immunity, along with various other common-law immunity doctrines. *City of Tucson v. Fahringer*, 164 Ariz. 599, 600-01 (1990). Consistent with this understanding, in another case involving § 12-820.01(A), this court stated that a "[c]ounty exercises its 'legislative function' by creating, defining, or regulating rights." *County of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, ¶ 35 (2010). Applying this definition, the Board's decision concerning whom to appoint as constable is not a legislative function. *See Mathis*, 231 Ariz. 103, ¶ 79. Although the law assigns responsibility for appointment of constables to county boards of supervisors under limited circumstances, there is nothing uniquely legislative in the act of appointing a person to fill a vacant office. *See* § 16-230(A)(2). By default, our constitution treats appointment of

officers to fill vacancies as a responsibility of the executive. Ariz. Const. art V, § 8.

¶10 Despite the Board's role in filling a vacancy in the office of constable, the constable's authority is independently defined by law, and the Board's appointment of a person to fill that office cannot expand, contract, or otherwise redefine that authority. *See* A.R.S. § 22-131. The appointment lacks the "hallmarks of traditional legislation" because it sets no prospective policy, *Fields*, 206 Ariz. 130, ¶ 21 (quoting *Bogan*, 523 U.S. at 55), and does not "creat[e], defin[e], or regulat[e] rights," *Yakima Compost Co.*, 224 Ariz. 590, ¶ 35. Pima County is not, therefore, entitled to absolute immunity under § 12-820.01(A)(1) for its appointment of Martinez-Garibay as constable.

## II. Judicial Immunity

¶11 Garibay and Pima County argue Martinez-Garibay is "entitled to judicial immunity" because she was serving the writ pursuant to a court order. Judicial immunity is a common-law doctrine that exists "to assure that judges will exercise their functions with independence and without fear of consequences." *Acevedo v. Pima Cnty. Adult Prob. Dep't*, 142 Ariz. 319, 321 (1984). "Whether judicial immunity exists is a legal question for the court." *Burk v. State*, 215 Ariz. 6, ¶ 7 (App. 2007).

¶12 Fox argues that judicial immunity does not apply here because "[t]he underlying policy of principled and fearless decision-making is not served by allowing immunity under the circumstances presented in this case." At oral argument before this court, he argued that even though judicial immunity protects a judge's order issuing a writ, it does not extend to the officer who acts in furtherance of that order by serving it. But "[j]udicial immunity is not limited to judges." *Id.* ¶ 8. It also protects officers "who perform functions 'intimately related to' or that are 'an integral part of the judicial process.'" *Id.* (quoting *Acevedo*, 142 Ariz. at 321). Fox correctly cites *Acevedo*, 142 Ariz. at 321, for the proposition that "the applicability of judicial immunity to officers serving the judiciary is limited to those situations where the underlying policy of judicial immunity is served: principled and fearless decision-making by that officer." Contrary to Fox's argument, however, that policy "is served by removing the possibility that 'a non judicial officer who is delegated judicial duties in aid of the court'" will become a target for litigation "aimed at the court." *Id.* (quoting *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980)).

**¶13** So long as a public employee acts pursuant to the court's directives, "acting pursuant to court order is [a] basis for granting absolute immunity." *Adams v. State*, 185 Ariz. 440, 444 (App. 1995); *see also Acevedo*, 142 Ariz. at 322 ("A probation officer cannot assert for immunity unless the officer is acting pursuant to or in aid of the directions of the court."). For example, in *Yamamoto v. Santa Cruz County Board of Supervisors*, 124 Ariz. 538, 540 (App. 1979), we determined judicial immunity protected a court clerk engaged in an "essentially ministerial" act following a judge's order. Arizona courts have likewise extended judicial immunity to other non-judicial officers who "performed a function, pursuant to a court directive, which was related to the judicial process." *Acevedo*, 142 Ariz. at 321.

**¶14** The relevant question is not whether constables are, as a general matter, judicial or executive officers. The parties have cited no binding authority resolving that question, and we have found none. *See Powers v. Carpenter*, 203 Ariz. 116, ¶ 21 (2002) (declining to reach the issue). The question is whether Martinez-Garibay was performing a judicial function in serving the writ of restitution on Stansell. On that issue, it is well established in Arizona law that sheriffs act as officers of the court when performing certain statutory duties, especially the duties to attend court and serve process. *See Merrill v. Phelps*, 52 Ariz. 526, 531 (1938); *Arpaio v. Baca*, 217 Ariz. 570, ¶ 27 (App. 2008); *Clark v. Campbell*, 219 Ariz. 66, ¶ 21 (App. 2008); A.R.S. § 11-441(A)(4), (7). Our supreme court has addressed the court's authority over sheriffs as a question of "the power of the court over its own officers." *State ex rel. Andrews v. Superior Court*, 39 Ariz. 242, 248 (1931). That power does not extend beyond the court's discipline and control over the particular acts that sheriffs perform as officers of the court. *Id.* at 248-49. But within the scope of those duties, sheriffs act as "the executive arm of the court, acting under its orders in all respects." *Merrill*, 52 Ariz. at 531.

**¶15** The same is true of a constable. A constable is required by law to serve process as directed by a court. § 22-131(A). "When a constable attends a court and serves process as directed by a court, the constable, like a sheriff, is acting as an officer of the court." *Clark*, 219 Ariz. 66, ¶ 21. While carrying out those duties as an officer of the court, "the court 'has jurisdiction either to exercise control over the act or to discipline the officer for doing or not doing it.'" *Id.* (quoting *Andrews*, 39 Ariz. at 248-49). We conclude that service of a writ is necessarily a judicial function, closely tied to the judicial decision to issue the writ in the first place. *See Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996) ("[A]n official charged with executing a facially valid court order has no choice but to do so."). It is,

therefore, protected by the doctrine of judicial immunity. *See id.* at 113-14 (judicial immunity applied to service of facially valid writ); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238-39 (7th Cir. 1986) (judicial immunity extended to seizure of property pursuant to court order to enforce judgment); *Tymiak v. Omodt*, 676 F.2d 306, 308 (8th Cir. 1982) (sheriff, acting under direction of court, was immune from suit for purportedly wrongful eviction). In this case, in serving a court-issued writ of restitution, Martinez-Garibay "act[ed] as an officer of the court" under the cloak of judicial immunity. *Clark*, 219 Ariz. 66, ¶ 21.

**¶16** Fox, however, relies on § 22-131(D) and A.R.S. § 11-449 to argue that the legislature has abrogated judicial immunity for constables while serving writs. Section 22-131(D) states that "[t]he provisions of law relating to sheriffs . . . shall govern the powers, duties and liabilities of constables," and under § 11-449, a sheriff is liable if the "sheriff neglects to make due return of a writ or paper delivered to him to be served or executed, or is guilty of any misconduct in the service or execution thereof." We review questions of statutory interpretation de novo. *Stambaugh v. Killian*, 242 Ariz. 508, ¶ 7 (2017). "Our task in statutory construction is to effectuate the text if it is clear and unambiguous." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, ¶ 9 (2018). We therefore "'interpret statutory language in view of the entire text, considering the context and related statutes on the same subject,' giving the words 'their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended.'" *Windhurst v. Ariz. Dep't of Corr.*, 256 Ariz. 186, ¶ 13 (2023) (citations omitted) (quoting *Molera v. Hobbs*, 250 Ariz. 13, ¶ 34 (2020), and then *Ariz. ex rel. Brnovich v. Maricopa Cnty. Cmty. Coll. Dist. Bd.*, 243 Ariz. 539, ¶ 7 (2018)).

**¶17** Read according to the ordinary meaning of their words in context, § 22-131(D) and § 11-449 do not abrogate judicial immunity. "The doctrine of judicial immunity is an ancient one in the common law." *Acevedo*, 142 Ariz. at 321. We require "a clear manifestation of legislative intent to abrogate the common law." *Owner-Operator Indep. Drivers Ass'n v. Pac. Fin. Ass'n, Inc.*, 241 Ariz. 406, ¶ 27 (App. 2017). Section 11-449 manifests no such intent. With language in effect since 1913, it provides liability for "damages sustained" and "a penalty of two hundred dollars" when a sheriff "neglects" to serve a writ or is "guilty of any misconduct in [its] service." § 11-449; Ariz. Civ. Code, §§ 2542-43 (1913). It appears in an article that addresses the office of sheriff, and nothing in the statute's language speaks to either the application or any abrogation of judicial immunity.

¶18          The legislature codified the judicial immunity doctrine in 1984 by adopting § 12-820.01(A)(1), which provides absolute immunity for "[t]he exercise of a judicial . . . function." *See Fahringer*, 164 Ariz. at 600. Unlike § 11-449, § 12-820.01 directly governs our application of common-law immunity doctrines. It provides no exception for the service of a writ. Under the unambiguous terms of § 12-820.01(A)(1), absolute immunity simply depends on whether service of a writ is a judicial function. We conclude that it is. Interpreting § 11-449 as an abrogation of the common-law doctrine of judicial immunity would place that older statute in conflict with the more recent § 12-820.01(A)(1). *See Jurju v. Ile*, 255 Ariz. 558, ¶ 21 (App. 2023) (favoring statutory interpretation that reconciles apparent conflicts). Assuming such a conflict exists, § 12-820.01(A)(1) would control our analysis because it is both more recently enacted and more specific to the question of judicial immunity. *See State v. Jones*, 235 Ariz. 501, ¶ 11 (2014) ("the more recent and specific statute applies"); *see also Owner-Operator Indep. Drivers Ass'n*, 241 Ariz. 406, ¶ 27 (requiring clear legislative intent to abrogate common law doctrines).

¶19          We have found no authority, however, suggesting that § 11-449 has ever been understood as an abrogation of judicial immunity. Rather, "we have specifically recognized the continued validity of the doctrine of judicial immunity" despite the statute's existence. *Acevedo*, 142 Ariz. at 321. And as noted, the legislature codified the common-law doctrine when it adopted § 12-820.01. *See Fahringer*, 164 Ariz. at 600. In any event, the language in § 11-449 does not conflict with the application of judicial immunity to the service of writs in accordance with both the common-law principle and the provision of absolute immunity for judicial functions in § 12-820.01(A)(1). *See Welch-Doden v. Roberts*, 202 Ariz. 201, ¶ 22 (App. 2002) ("In construing statutes, we have a duty to interpret them in a way that promotes consistency, harmony, and function.").

¶20          The common-law doctrine of judicial immunity protects judicial acts "even when such acts are in excess of [a judicial officer's] jurisdiction or are alleged to have been done maliciously or corruptly." *Acevedo*, 142 Ariz. at 321. As we have explained, it not only protects a judge's decision to issue an order but extends also to others who carry out that order. *See id.* And a sheriff or constable who "attends a court and serves process as directed by a court . . . is acting as an officer of the court." *Clark*, 219 Ariz. 66, ¶ 21. But when an officer subject to a court order instead "ignore[s] the specific direction of the court" or acts "*contrary* to the court's directive," judicial immunity does not apply. *Acevedo*, 142 Ariz. at 322. Thus, although common-law judicial immunity would protect a constable

while serving a writ "pursuant to or in aid of the directions of the court," its protection would cease when the constable acted contrary to the court's orders or ignored the court's directives. *See id.*

¶21            Likewise, although § 11-449 does not define "misconduct," § 11-441(A)(7) of the same article imposes a duty for a sheriff to "[s]erve process and notices in the manner prescribed by law." Section 11-449 imposes liability when the sheriff instead either "neglects" to return a writ or "is guilty of any misconduct" while serving it. Consistent with common-law principles, so long as the sheriff acts in furtherance of the duty to serve the writ as directed, judicial immunity shields the sheriff from liability. *Cf. Schuster v. Merrill*, 56 Ariz. 114, 118-19 (1940) (officer is bound to serve process when legal in form and proceeding from proper authority; thus, "[t]he only ground . . . upon which an action can be predicated against an officer for executing process is where the lack of authority for its issuance is apparent on its face").

¶22            Thus, we do not read § 11-449 as an abrogation of judicial immunity but in harmony with its principles. Nor do we interpret § 11-449 in any way contrary to the legislature's provision of absolute immunity for judicial functions in § 12-820.01(A)(1). Instead, "misconduct" under § 11-449 requires acts during service of the writ that are not performed in furtherance of the court's directives. Such acts would fall outside the protection of judicial immunity. *Cf. Fid. & Deposit Co. of Md. v. McFadden*, 47 Ariz. 116, 117-18, 120-22 (1936) (where writ directed sheriff "to attach and safely keep" cattle, liability attached for seizure of wrong person's cattle and "failure properly to care for them" as required); *Schuster*, 56 Ariz. at 118-19 (sheriff may be liable for failing to carry out commands of writ).

¶23            Although the word might sometimes be defined more broadly, our reading falls within the range of meanings for the word "misconduct" in use at the time of the statute's adoption. *See State ex rel. Ariz. Dep't of Revenue v. Tunkey*, 254 Ariz. 432, ¶ 23 (2023) (Bolick, J., concurring) (words in statutes should be interpreted "according to their original public meaning and broader statutory context"); *Matthews v. Indus. Comm'n*, 254 Ariz. 157, ¶ 33 (2022) ("Our examination of original public meaning starts with dictionary definitions from the time the provision was adopted."); *Molera*, 250 Ariz. 13, ¶ 35 (when statutory language not defined, "we give the term its common meaning"). For example, as defined in one dictionary published in 1904:

> The term "misconduct" implies a wrongful
> intention, and not a mere error of judgment.

> In usual parlance, misconduct means a transgression of some established and definite rule of action, where no discretion is left, except what necessity may demand; and carelessness, negligence, and unskillfulness are transgressions of some established, but indefinite, rule of action, where some discretion is necessarily left to the actor. Misconduct is a violation of definite law; carelessness, an abuse of discretion under an indefinite law. Misconduct is a forbidden act; carelessness, a forbidden quality of an act, and is necessarily indefinite.

**¶24** *Misconduct*, Judicial and Statutory Definitions of Words and Phrases (1904). Arizona courts of that time often similarly recognized a distinction between negligence, gross negligence, and misconduct. *Cf. Lassetter v. Becker*, 26 Ariz. 224, 234 (1924) (distinguishing "carelessness" from "willful and corrupt misconduct"); *Vinson v. O'Malley*, 25 Ariz. 552, 558 (1923) ("misconduct" required for removal from office "must be willful and corrupt"); *Morrell v. City of Phx.*, 16 Ariz. 511, 513-14 & 513 (1915) (recognizing distinction in city charter between negligence, for which city was immune, and "gross negligence or willful misconduct," for which city was liable).

**¶25** Our paramount concern is to interpret the statute according to its own language and context. *See S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, ¶ 31 (2023). Section 11-449 itself distinguishes between an officer's "neglect" to perform a duty and an officer's "misconduct" in performing it. That distinction suggests that as used in this statute, "misconduct" carries a meaning different from "neglect." *See State v. Harm*, 236 Ariz. 402, ¶ 19 (App. 2015) ("[W]hen the legislature chooses different words within a statutory scheme, we presume those distinctions are meaningful and evidence an intent to give a different meaning and consequence to the alternate language."). And again, our reading avoids conflict with either the later-adopted immunity statutes or the common-law doctrine, the abrogation of which requires manifest legislative intent, *see Owner-Operator Indep. Drivers Ass'n*, 241 Ariz. 406, ¶ 27. As contemplated in § 11-449, therefore, "misconduct" requires more than mere negligence or gross negligence in a sheriff's execution of the duty to serve a lawful writ pursuant to the direction of a court.

¶26　　　In this case, Fox alleges that Martinez-Garibay acted negligently or grossly negligently by directing Angela to accompany her at the eviction, even though she knew Stansell posed a danger. The allegations involve actions undertaken by Martinez-Garibay in connection with serving the writ, a court directive she was required to obey. *See* § 22-131(A). Even if Martinez-Garibay's actions were negligent or grossly negligent, a question on which we express no opinion, she was protected by immunity because she was complying with the court's directive. Nor does an allegation of negligence or gross negligence constitute "misconduct" within the meaning of § 11-449. We take no position on whether Fox might be able to amend the complaint to allege that Martinez-Garibay's acts constituted misconduct under § 11-449, which would establish a cause of action to which absolute judicial immunity would not apply.

## III. Remaining Issues

¶27　　　We need not reach the question of whether Martinez-Garibay owed a duty of care to Angela as a matter of law. In addition, Fox conceded at oral argument that if Martinez-Garibay's acts in serving the writ are shielded by judicial immunity, then Pima County cannot be vicariously liable for those same acts. Thus, we also have no need to reach the substantive question of vicarious liability.

## Disposition

¶28　　　The respondent judge was correct to conclude that legislative immunity does not protect the Board's decision to appoint Martinez-Garibay. The respondent erred, however, by finding that the constable's acts in service of a writ were not protected by judicial immunity. We therefore accept jurisdiction and grant partial relief, vacating those portions of the respondent's ruling that are inconsistent with this opinion.