NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

THOMPSON THRIFT DEVELOPMENT, INC., *Plaintiff/Appellee,*

*v.*

LELAND C. ALBERTSON, JR., et al., *Defendants/Appellants.*

No. 1 CA-CV 23-0082
FILED 10-24-2023

Appeal from the Superior Court in Maricopa County
No. CV2020-007328
The Honorable Scott A. Blaney, Judge

**AFFIRMED**

COUNSEL

Gammage & Burnham PLC, Phoenix
By Cameron C. Artigue
*Counsel for Plaintiff/Appellee*

Gust Rosenfeld PLC, Phoenix
By Charles W. Wirken
*Counsel for Defendants/Appellants*

Shaw & Lines LLC, Phoenix
By Mark E. Lines
*Counsel for Amicus Curiae Community Associations Institute*

---

**MEMORANDUM DECISION**

---

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Brian Y. Furuya joined.

---

**B A I L E Y**, Judge:

¶1        We consider whether a 2020 amendment to the original Declaration of Restrictions ("Declaration") for Tally Ho Farms Unit No. 2 ("Tally Ho"), a Tempe subdivision, is valid under *Kalway v. Calabria Ranch HOA, LLC*, 252 Ariz. 532 (2022). We conclude that it is. We also affirm the superior court's ruling declining to consider arguments Appellants incorporated by reference into their operative summary judgment motion, violating a standing order barring incorporation by reference.

## FACTS AND PROCEDURAL HISTORY

¶2        The Declaration, recorded in 1965, provides that all Tally Ho lots "are residential lots only." This and other covenants contained in the Declaration were to remain in effect until January 1, 1980, when they would "be automatically extended for successive periods of ten years each, unless by vote of a majority of the then owners of the said lots . . . it is agreed to change the said covenants in whole or in part."

¶3        In mid-2020, a majority of the Tally Ho owners consented to an amendment that would exclude Lots 1 and 2 and the southern half of Lot 3 (the "Excluded Lots") from the Declaration's covenants (the "Amendment"). The then-owners of the Excluded Lots consented to the Amendment.

¶4        Thompson Thrift Development, Inc. ("Thompson") contracted to buy the Excluded Lots with plans to pursue commercial development. It then sued those Tally Ho owners who had not consented to the Amendment (the "Dissenting Owners") seeking a declaratory judgment that the Amendment was valid. The Dissenting Owners counterclaimed, contending the Amendment was improper because (1) it did not apply to all lots, and (2) it could not take effect until the next ten-year renewal period ended on January 1, 2030. They also filed a third-party complaint against the former Excluded Lot owners.

¶5            Both Thompson and the Dissenting Owners moved for summary judgment.  Thompson contended the Amendment was valid under Arizona Revised Statutes ("A.R.S.") section 33-440(C)(2) and (C)(4), which provides that:

> 2. An amendment to a declaration may apply to fewer than all of the lots or less than all of the property that is bound by the declaration and an amendment is deemed to conform to the general design and plan of the community, if both of the following apply:
>
>> (a) The amendment receives the affirmative vote or written consent of the number of owners or eligible voters specified in the declaration, including the assent of any individuals or entities that are specified in the declaration.
>>
>> (b) The amendment receives the affirmative vote or written consent of all of the owners of the lots or property to which the amendment applies.
>
> . . .
>
> 4. Notwithstanding any provision in the declaration that provides for periodic renewal of the declaration, an amendment to the declaration is effective immediately on recordation of the instrument in the county in which the property is located.

A.R.S. § 33-440(C)(2), (4).    The Dissenting Owners contended these subsections, which were enacted in 2016, violated the Contract Clause of the Arizona Constitution and could not retroactively obstruct their preexisting rights under the Declaration.    They also contended the Amendment constituted a private taking.

¶6            The superior court postponed oral argument on the parties' cross-motions multiple times.  In March 2022, while argument was still pending, our supreme court issued its opinion in *Kalway*.  The superior court determined that *Kalway*'s "impact . . . must be evaluated before proceeding with Oral Argument" and directed the parties to confer on a "replacement briefing and a schedule for same."  It included the following paragraph in its order:

> This Division requires that all motions, responses, replies and other Court filings in this case must be submitted individually. Counsel shall not combine any motion with a responsive pleading. All motions are to be filed separately and designated as such. **No filing will be accepted if filed in combination with another**. **Additionally, all filings shall be fully self-contained and shall not "incorporate by reference" other separate filings for review and consideration as part of the pending filing.**

(Emphasis in original.) This paragraph also had appeared in several prior orders. And when the court later approved the parties' proposed briefing schedule, it stated that the new briefing would "replace[ ] in full" the parties' briefs on their earlier motions.

¶7 In its replacement motion, Thompson reasserted its arguments from its original motion and further contended that *Kalway* "does not apply to amendments that remove obligations" such as the Amendment. The Dissenting Owners contended in their replacement motion that *Kalway* "unequivocally prohibits CC&R amendments . . . that are not anticipated by the language in the CC&Rs, regardless of whether [A.R.S. § 33-440(C)] permits such an amendment." They did not, however, reassert any arguments from their prior motion. They instead incorporated by reference their entire original motion and accompanying statement of facts in a footnote.

¶8 The superior court granted Thompson's motion and denied the Dissenting Owners' motion. While the court did not mention the Dissenting Owners' attempt to incorporate their prior motion by reference, it stated that "[t]he only question remaining in this case – and the reason that the parties engaged in 'replacement' briefing – arises from the Arizona Supreme Court's recent opinion in *Kalway*." The court determined that "the language of *Kalway* is broad enough to support either [side's] interpretation" but favored Thompson's reading, concluding that *Kalway* was inapplicable because the Amendment did not impose any "new restrictions or affirmative obligations."

¶9 The Dissenting Owners moved for reconsideration, contending the superior court "did not consider the constitutional arguments . . . in their original cross motion for summary judgment, incorporated in the replacement briefing in footnote one of both the replacement motion and response." The court denied the motion, finding their attempt at incorporation by reference was "an end-run around the

4

page limitations set forth in the Arizona Rules of Civil Procedure and this Court's orders" that, if permitted, would have "force[d] the responding party to violate the same page-limit rules while substantively responding to the present motion and all previous motions 'incorporated by reference.'"

**¶10** The superior court then entered two Arizona Rule of Civil Procedure ("Rule") 54(b) judgments. The first granted Thompson's declaratory relief claim and permanently enjoined the Dissenting Owners from enforcing the Declaration's covenants against the Excluded Lots. The second awarded Thompson attorneys' fees and costs.

**¶11** Shortly thereafter, one of the Dissenting Owners—Shirley D. Albertson, as trustee of the Albertson Family Trust ("Albertson")—moved for a new trial, asserting both *Kalway* and non-*Kalway* arguments. The court denied that motion in a certified Rule 54(c) order. Albertson and five other Dissenting Owners (collectively, "Appellants") appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1), (5)(a).

## DISCUSSION

I.      The superior court did not abuse its discretion by enforcing its orders prohibiting incorporation by reference.

**¶12** The Dissenting Owners contend the superior court erred in denying their motion for reconsideration, arguing broadly that cases should be resolved on their merits. *See, e.g., MRF Const. Co. v. Indus. Comm'n*, 111 Ariz. 466, 469 (1975). There is, however, "a limit to which judicial leniency can be stretched." *Adams v. Valley Nat. Bank of Ariz.*, 139 Ariz. 340, 342 (App. 1984).

**¶13** As discussed above, the motion for reconsideration re-asserted non-*Kalway* arguments the Dissenting Owners tried to incorporate by reference into their replacement summary judgment motion. We review the court's denial of a motion for reconsideration for an abuse of discretion. *Worldwide Jet Charter, Inc. v. Christian*, 255 Ariz. 67, 70, ¶ 10 (App. 2023).

**¶14** The superior court's orders prohibiting incorporation by reference were clear. After the Dissenting Owners notified the court of *Kalway*, court staff e-mailed both sides and asked them "to review and determine what modified or replacement filings need to be made . . . before the motions can be entertained." The court then ordered the parties to "inform themselves of *Kalway*, confer and consult with one another and file . . . a Joint Notice proposing replacement briefing and a schedule for same

for the Court's consideration." That order included the blanket prohibition of incorporation by reference quoted in paragraph 6, *supra*. The court included the same prohibition in its order setting oral argument. Appellants concede they "disregarded" that prohibition.

¶15 The superior court also ordered that the parties' new motions and responses would "replace[ ] in full the briefing" on the original cross-motions. The Dissenting Owners nonetheless twice chose to incorporate by reference their prior motion, response, and reply: once in their replacement cross-motion and again in their response to Thompson's replacement motion.

¶16 While Rule 10(c) allows adoption by reference of statements in a pleading "in any other pleading or motion," the Dissenting Owners cite no rule or case that allows adoption of an entire motion by reference. Ariz. R. Civ. P. 10(c); *see Wilson v. Pauling*, 457 F. Supp. 3d 965, 978 n.2 (D. Colo. 2020) (finding no authority under the identical language of Fed. R. Civ. P. 10(c) that would allow "incorporation of a party's prior motion into a later motion"); *Flynn v. Campbell*, 243 Ariz. 76, 80, ¶ 9 (2017) ("[U]niformity in interpretation of our rules and the federal rules is highly desirable.") (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 304 (1990)). And as the superior court observed, permitting incorporation by reference would have allowed the Dissenting Owners to file two summary judgment motions on different grounds and significantly exceed the page limitation on supporting memoranda. Ariz. R. Civ. P. 7.1(a)(2); *see Johns Hopkins Univ. v. 454 Life Scis. Corp.*, 183 F. Supp. 3d 563, 572 (D. Del. 2016) (stating that litigants cannot "rely on 'incorporation by reference' in order to evade the Court's page limits"); *Herrera v. Santa Fe Pub. Sch.*, 41 F. Supp. 3d 1188, 1239 n.75 (D.N.M. 2014) (treating a party's attempt to incorporate by reference its earlier response to a separate motion as an improper "end run around page limits").

¶17 On this record, we cannot say the superior court abused its discretion in denying the Dissenting Owners' motion for reconsideration. We therefore do not reach those arguments the Dissenting Owners attempted to incorporate by reference from their original summary judgment motion.

II. We reject Appellants' *Kalway* arguments.

¶18 We can, however, address the *Kalway* arguments the Dissenting Owners briefed in their replacement motion. In determining whether either party is entitled to summary judgment on cross-motions, we

review questions of law *de novo* and view the facts in a light most favorable to the party against whom summary judgment was granted. *In re Est. of Podgorski*, 249 Ariz. 482, 484, ¶ 8 (App. 2020). Summary judgment is warranted only if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). The parties agreed there were no material fact disputes that would preclude summary judgment. We remain mindful that summary judgment should not be granted if the undisputed facts would allow reasonable minds to differ. *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191 (App. 1994).

¶19 In *Kalway*, our supreme court considered amendments to a declaration that "change[d] some definitions and add[ed] others, create[d] new restrictions, and enact[ed] new enforcement measures against owners for violating the covenants." *Kalway*, 252 Ariz. at 536, ¶ 4. The amendments also added restrictions "limiting owners' ability to convey or subdivide their lots, restricting the size and number of buildings permitted on each lot, and reducing the maximum number of livestock permitted on each lot." *Id.* at 537, ¶ 4. The non-consenting owners sued to invalidate these new restrictions. *Id.* at ¶ 5.

¶20 Our supreme court first considered whether the original declaration provided adequate notice of the prospective amendments. *Id.* at ¶ 8. Citing *Dreamland Villa Community Club, Inc. v. Raimey*, 224 Ariz. 42 (App. 2010), the court stated that a declaration "must give sufficient notice of the possibility of a future amendment; that is, amendments must be reasonable and foreseeable." *Id.* at ¶ 10. And though the declaration at issue allowed amendment "at any time by an instrument executed and acknowledged by the [m]ajority [v]ote of the owners," the court held the association could not "create new affirmative obligations where the original declaration did not provide notice to the homeowners that they might be subject to such obligations." *Id.* at 536, 538, ¶¶ 3, 14.

¶21 The supreme court then explained what level of notice is required:

> The restriction itself does not have to necessarily give notice of the particular details of a future amendment; that would rarely happen. Instead, it must give notice that a restrictive or affirmative covenant exists and that the covenant can be amended to refine it, correct an error, fill in a gap, or change it in a particular way. But future amendments cannot be "entirely new and different in character," untethered to an original covenant. Otherwise, such an amendment would

infringe on property owners' expectations of the scope of the covenants.

*Id.* at 539, ¶ 17 (internal citations omitted). On this basis, the court rejected or blue-penciled most of the new restrictions. *Id.* at 539–42, ¶¶ 18–41.

        A.      The Declaration complied with *Kalway*'s notice requirement.

**¶22** The Dissenting Owners contended the Declaration did "not provide any notice that the residential restriction . . . may be lifted or that any amendment may apply to less than all the lots." They rely on *Kalway*'s introductory paragraph, which states that "a general-amendment-power provision may be used to amend only those restrictions for which the HOA's original declaration has provided sufficient notice." *Id.* at 536, ¶ 1.

**¶23** The notice provided in the Declaration appears to meet *Kalway*'s "sufficient notice" requirement. For example, the *Kalway* court allowed an amendment that defined "garage" because "the original declaration referenced a 'garage,'" which meant that "a later amendment defining the term was reasonably foreseeable." *Id.* at 540, ¶ 24. Here, the Declaration references the residential-use-only restriction and provides that its covenants can be "change[d] . . . in whole or in part" by majority vote. The residential-use-only covenant is not excluded from this provision. As such, later amendments, including elimination of the residential covenant, would seem to be reasonably foreseeable.

**¶24** The Dissenting Owners also contend the Declaration did not give notice "that amendments could affect less than all the lots within Tally Ho Farms" or that the amendment could become effective before "the subsequent renewal cycle." But the Declaration explicitly provides that a majority of the then-Tally Ho lot owners could agree to "change the said covenants . . . in part." The Declaration thus gave reasonable notice that later amendments could affect less than all of the lots. And *Kalway* does not require that the restriction "give notice of the particular details of a future amendment." *Id.* at 539, ¶ 17. We thus need not discern whether the original declarant contemplated or anticipated that this specific amendment would arise more than forty years later.

        B.      *Kalway* did not invalidate A.R.S. § 33-440(C)(2) or (C)(4).

**¶25** The Dissenting Owners rely on common law predating the current version of A.R.S. § 33-440(C) to contend the Amendment cannot remove restrictions only as to the Excluded Lots or become effective immediately in light of the Declaration's renewal-period provision. *See La*

*Esperanza Townhome Ass'n, Inc. v. Title Sec. Agency of Ariz.*, 142 Ariz. 235 (App. 1984) (uniform application); *Scholten v. Blackhawk Partners*, 184 Ariz. 326 (App. 1995) (renewal-period provision). The changes in the Amendment are expressly permitted by A.R.S. § 33-440(C)(2) and (C)(4), and we presume a statutory amendment changes the prior law. *Enter. Leasing Co. of Phoenix v. Ariz. Dep't of Revenue*, 221 Ariz. 123, 126, ¶ 10 (App. 2008).

**¶26** The Dissenting Owners contend, however, that A.R.S. § 33-440(C) did not displace the common law, citing *Kalway*'s statement that a similar statute for planned communities, A.R.S. § 33-1817(A), did not do so. *Kalway*, 252 Ariz. at 537, ¶ 10. *Kalway* only addressed that part of A.R.S. § 33-1817(A) that allows "amendment of CC&Rs by a majority vote if such voting scheme is specified in the original declaration." *Id.* And the supreme court did not address a non-uniform application nor a renewal-period provision. *Id.* at 539–42, ¶¶ 22–41. The *Kalway* court thus did not consider whether A.R.S. § 33-440(C)(2) and (C)(4), or similar provisions in A.R.S. § 33-1817(A), displaced the common law.

**¶27** This does not end our analysis. While the legislature can modify or abrogate common law, it must do so either expressly or by necessary implication. *Owner-Operator Indep. Drivers Ass'n v. Pac. Fin. Ass'n, Inc.*, 241 Ariz. 406, 413, ¶ 27 (App. 2017). We conclude that the statutes implicitly modify common law. Section 33-440(C)(2) states that an amendment "may apply to fewer than all of the lots or less than all of the property that is bound by the declaration" if it meets the voting requirements of the declaration and the owners to whom the amendment applies vote affirmatively or consent in writing.[1] Similarly, A.R.S. § 33-440(C)(4) states that amendments are "effective immediately on recordation" "[n]otwithstanding any provision in the declaration that provides for periodic renewal of the declaration." These provisions clearly indicate changes to the common law, which we assume the legislature was

---

[1] The Dissenting Owners contend the Amendment requires unanimous approval because commercial development on the Excluded Lots "with its accompanying employee and customer traffic, noise, lights, and cooking odors will affect the Tally Ho neighborhood as a whole" and the Amendment therefore "applied" to all lots under A.R.S. § 33-440(C)(2)(b). The Dissenting Owners did not raise this argument in superior court. Albertson instead raised it for the first time in her motion for new trial. We therefore do not address it. *Conant v. Whitney*, 190 Ariz. 290, 293 (App. 1997).

aware of when it enacted A.R.S. § 33-440(C).  *Wareing v. Falk*, 182 Ariz. 495, 500 (App. 1995).

¶28      For these reasons, we reject the Dissenting Owners' contention that *Kalway* rendered A.R.S. § 33-440(C)(2) and (C)(4) ineffective. *See Lake Havasu City v. Mohave County*, 138 Ariz. 552, 558 (App. 1983) ("[W]hen the legislature amends a statute we must presume they intended to change existing law rather than perform a futile act.").

III.     The superior court did not abuse its discretion in denying Albertson's motion for new trial.

¶29      The Dissenting Owners also challenge the denial of Albertson's motion for new trial.  We review that ruling for an abuse of discretion.  *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 239 Ariz. 151, 154, ¶ 10 (2016).

¶30      Albertson's new trial motion reasserted multiple arguments the Dissenting Owners tried to incorporate by reference into their replacement summary judgment motion.  Albertson also reasserted the *Kalway* arguments discussed above, broadly contending that "the ruling on the cross-motions for summary judgment is contrary to law and the denial of the . . . motion for reconsideration was an abuse of discretion."  As we affirm the denials of those motions, we also affirm the denial of Albertson's motion for new trial.

IV.      The Amicus Curiae Brief

¶31      Community Associations Institute ("CAI") filed an amicus curiae brief requesting "clarification" and possible "limitation" of *Kalway*. Whether *Kalway* should be clarified or limited is a question for our supreme court.  *See Sell v. Gama*, 231 Ariz. 323, 330, ¶ 31 (2013) ("The lower courts are bound by our decisions, and this Court alone is responsible for modifying that precedent.").  We therefore decline CAI's invitation to reach beyond the specific facts of this case to provide "direction and guidance."

V.       Attorneys' Fees and Costs on Appeal

¶32      Both sides request their attorneys' fees and taxable costs incurred in this appeal under A.R.S. §§ 12-341 and 12-341.01(A).  Thompson is the successful party on appeal and may recover reasonable attorneys' fees and taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure ("ARCAP") 21.  We deny Appellants' request for ARCAP 25 and A.R.S. § 12-349 sanctions against CAI.

## CONCLUSION

¶33    We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA